ACCEPTED
03-15-00063-CR
4288674
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/25/2015 9:54:12 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00063-CR

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

2/25/2015 9:54:12 PM

JEFFREY D. KYLE
Clerk

### EX PARTE JAMES RICHARD "RICK" PERRY

ON APPEAL FROM THE 390TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS, CAUSE NO. D-1-DC-14-100139

## APPELLANT'S BRIEF

THE BUZBEE LAW FIRM
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tbuzbee@txattorneys.com
Telephone:  713.223.5393
Facsimile:   713.223.5909

BAKER BOTTS L.L.P.
Thomas R. Phillips
State Bar No. 00000102
San Jacinto Center
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4078
tom.phillips@bakerbotts.com
Telephone:  512.322.2500
Facsimile:   512.322.2501

BOTSFORD & ROARK
David L. Botsford
State Bar No. 02687950
1307 West Avenue
Austin, Texas 78701
dbotsford@aol.com
Telephone:  512.479.8030
Facsimile:   512.479.8040

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Tex. R. App. P. 38.1(a), the following is a complete list of the names and addresses of all parties and counsel in this case.

**Appellant:** Governor James Richard "Rick" Perry.

**Appellant's Counsel:** Anthony G. Buzbee, JPMorgan Chase Tower, 600 Travis Street, Suite 7300, Houston, Texas 77002; Thomas R. Phillips, 98 San Jacinto Blvd., Suite 1500, Austin, Texas 78701-4078; and David L. Botsford, 1307 West Avenue, Austin, Texas, 78701.

**State of Texas:** Attorney Pro Tem Michael McCrum, 700 N. Saint Mary's Street, Suite 1900, San Antonio, Texas 78205; Assistant Attorney Pro Tem David Gonzalez, 206 East 9th Street, Suite 1511, Austin, Texas, 78701.

i

## TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................. i

Index of Authorities ............................................................................... iv

Statement of the Case............................................................................ xv

Statement Regarding Oral Argument ................................................... xvi

Issues Presented ................................................................................... xvii

Statement of the Facts.............................................................................. 1

Summary of the Argument........................................................................ 3

Argument................................................................................................... 7

I.    Count II must be dismissed because the coercion statute is facially unconstitutional under the First Amendment.......................... 7

    A.    The coercion statute is facially overbroad. ............................... 10

    B.    The coercion statute is not the least restrictive means of serving a compelling state interest........................................... 17

II.    Count II also must be dismissed because the coercion statute is unconstitutionally vague on its face............................................... 22

III.    Governor Perry's other constitutional challenges are all cognizable in a pretrial habeas proceeding. ...................................... 28

    A.    General principles of cognizability.......................................... 29

    B.    Governor Perry's claims are cognizable in a pretrial habeas proceeding................................................................. 33

IV.    The indictment violates the constitutional separation of powers....... 38

V.    The indictment violates the Texas Speech or Debate Clause and the common-law doctrine of legislative immunity. ........................... 45

VI.    The abuse-of-official-capacity statute is unconstitutionally

vague as applied to the veto alleged on the face of the indictment. ...................................................................... 53

VII. The coercion statute is unconstitutional as applied to the veto threat alleged on the face of the indictment. ...................................... 55

    A.    As applied, the coercion statute is unconstitutionally vague. ..................................................................................56

    B.    As applied, the coercion statute violates the First Amendment. ..........................................................................58

Conclusion .................................................................................................59

Certificate of Compliance .........................................................................62

Certificate of Service ................................................................................62

Index to Appendix.....................................................................................63

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Abney v. United States*,
431 U.S. 651 (1977)..................................................................................36

*Alliance to End Repression v. City of Chicago*,
742 F.2d 1007 (7th Cir. 1984) ...............................................................13

*Armadillo Bail Bonds v. State*,
802 S.W.2d 237 (Tex. Crim. App. 1990) ..............................................39

*Ashcroft v. Am. Civil Liberties Union*,
542 U.S. 656 (2004)..................................................................................10

*Baker v. Carr*,
369 U.S. 186 (1962)..................................................................................43

*Barnes v. Secretary of Admin.*,
586 N.E.2d 958 (Mass. 1992)..................................................................42

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998)................................................................42, 48, 50, 51

*Bowles v. Clipp*,
920 S.W.2d 752 (Tex. App.—Dallas 1996, writ denied) ....................46

*Camacho v. Samaniego*,
954 S.W.2d 811 (Tex. App.—El Paso 1997, pet. denied)...................48

*Canfield v. Gresham*,
17 S.W. 390 (Tex. 1891)....................................................................45, 47

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 320 (2010)..................................................................................33

*City of Seattle v. Ivan*,
856 P.2d 1116 (Wash. App. 1993) ..........................................................14

*Coffin v. Coffin*,
    4 Mass. 1 (1808) .......................................................................................46

*Colautti v. Franklin*,
    439 U.S. 379 (1979)..................................................................................25

*Coleman v. Miller*,
    307 U.S. 433 (1939)..................................................................................42

*Collection Consultants, Inc. v. State*,
    556 S.W.2d 787 (Tex. Crim. App. 1977) .......................................................20

*Cook v. State*,
    902 S.W.2d 471 (Tex. Crim. App. 1995) .......................................................40

*Crouch v. Civil Service Comm'n of Tex. City*,
    459 S.W.2d 491 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd
    n.r.e.) ..................................................................................................25

*Cuellar v. State*,
    70 S.W.3d 815 (Tex. Crim. App. 2002) ........................................................55

*D'Amato v. Superior Court*,
    167 Cal. App. 4th 861 (2008) ....................................................................49

*Doe v. McMillan*,
    412 U.S. 306 (1973)........................................................................46, 47, 49

*Dombrowksi v. Eastland*,
    387 U.S. 82 (1967)....................................................................................36

*Ely v. State*,
    582 S.W.2d 416 (Tex. Crim. App. 1979) .......................................................23

*Ex parte Boetscher*,
    812 S.W.2d 600 (Tex. Crim. App. 1991) ..................................................32, 35

*Ex parte Brown*,
    158 S.W.3d 449 (Tex. Crim. App. 2005) .......................................................29

*Ex Parte Doster*,
   303 S.W.3d 720 (Tex. Crim. App. 2010) ...............................................30, 31, 32

*Ex parte Elliott*,
   973 S.W.2d 737 (Tex. App—Austin 1998, pet. ref'd) .................................32, 40

*Ex Parte Ellis*,
   309 S.W.3d 71 (Tex. Crim. App. 2010) .......................................................31, 34

*Ex parte Ferdin*,
   183 S.W.2d 466 (Tex. Crim. App. 1944) .............................................................43

*Ex parte Giles*,
   502 S.W.2d 774 (Tex. Crim. App. 1974) .............................................................40

*Ex parte Gill*,
   413 S.W.3d 425 (Tex. Crim. App. 2013) .............................................................40

*Ex parte Lo*,
   424 S.W.3d 10 (Tex. Crim. App. 2013) .................................................18, 19, 40

*Ex parte Meza*,
   185 S.W.2d 444 (Tex. Crim. App. 1945) .............................................................43

*Ex Parte McCullough*,
   966 S.W.2d 529 (Tex. Crim. App. 1998) .............................................................32

*Ex parte Pitt*,
   206 S.W.2d 596 (Tex. Crim. App. 1947) .............................................................43

*Ex parte Rathmell*,
   717 S.W.2d 33 (Tex. Crim. App. 1986) ...............................................................31

*Ex parte Robinson*,
   641 S.W.2d 552 (Tex. Crim. App. 1982) .......................................31, 32, 36, 37

*Ex parte Smith*,
   178 S.W.3d 797 (Tex. Crim. App. 2005) .......................................30, 31, 32, 34

*Ex parte Thompson*,
   442 S.W.3d 325 (Tex. Crim. App. 2014) .................................................8, 9, 19

*Ex parte Watkins*,
    73 S.W.3d 264 (Tex. Crim. App. 2002) .......................................................31, 33

*Ex parte Weise*,
    55 S.W.3d 617 (Tex. 2001).................................................................30, 31, 32

*Fulmore v. Lane,*
    140 S.W. 405 (Tex. 1911)..............................................................................41

*Garrison v. La.*,
    379 U.S. 64 (1964)........................................................................................17

*Goldwater v. Carter*,
    444 U.S. 996 (1979).....................................................................................42

*Gooding v. Wilson*,
    405 U.S. 518 (1972).....................................................................................23

*Gravel v. United States*,
    408 U.S. 606 (1972)................................................................................46, 47

*Grayned v. Rockford*,
    408 U.S. 104 (1972)................................................................................22, 23

*Helstoski v. Meanor*,
    442 U.S. 500 (1979).....................................................................................36

*Henderson v. State*,
    962 S.W.2d 544 (Tex. Crim. App. 1997) .......................................................29

*Hernandez v. City of Lafayette*,
    643 F.2d 1188 (5th Cir. 1981) ......................................................................48

*Homan v. Branstad*,
    812 N.W.2d 623 (Iowa 2012) .......................................................................42

*In re Masonite Corp.*,
    997 S.W.2d 194 (Tex. 1999) .........................................................................37

*In re Perry*,
    60 S.W.3d 857 (Tex. 2001).........................................................36, 47, 49, 50

vii

*Irons v. R.I. Ethics Comm'n*,
 973 A.2d 1124 (R.I. 2009) ..................................................................50

*Jessen Assocs., Inc. v. Bullock*,
 531 S.W.2d 593 (Tex. 1976) .........................................................41, 48

*Karenev v. State*,
 281 S.W.3d 428 (Tex. Crim. App. 2009) ............................................34

*Kilbourn v. Thompson*,
 103 U.S. 168 (1880).....................................................................46, 47

*Kramer v. Price*,
 712 F.2d 174 (5th Cir. 1983) ..............................................................23

*Langever v. Miller*,
 76 S.W.2d 1025 (Tex. 1934) ...............................................................39

*Long v. State*,
 931 S.W.2d 285 (Tex. Crim. App. 1991) ..................................22, 23, 25

*Luther v. Borden*,
 48 U.S. 1 (1849)..................................................................................42

*McIntyre v. Ohio Elections Comm'n*,
 514 U.S. 334 (1995)..............................................................................8

*Meshell v. State*,
 739 S.W.2d 246 (Tex. Crim. App. 1987) ............................................39

*Meyer v. Grant*,
 486 U.S. 414 (1988)...................................................................8, 17, 58

*Mitchell v. Forsyth*,
 472 U.S. 511 (1985)............................................................................36

*Mutscher v. State*,
 514 S.W.2d 905 (Tex. Crim. App. 1974) ............................................48

*N.A.A.C.P. v. Claiborne Hardware Co.*,
 458 U.S. 886 (1982)............................................................................12

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ..................................................................................8

*Nixon v. United States*,
   506 U.S. 224 (1993) ................................................................................42

*Olivas v. State*,
   203 S.W.3d 341 (Tex. Crim. App. 2006) ...............................................26

*Papachristou v. City of Jacksonville*,
   405 U.S. 156 (1971) ................................................................................23

*People v. Iboa*,
   207 Cal. App. 4th 111 (2012) ..................................................................15

*Phillips v. State*,
   401 S.W.3d 282 (Tex. App.—San Antonio 2013, pet. ref'd)..................16

*Pickle v. McCall*,
   24 S.W. 265 (Tex. 1893).........................................................................41

*Puckett v. State*,
   801 S.W.2d 188 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd)................19

*Roberts v. State*,
   278 S.W.3d 778 (Tex. App.—San Antonio 2008, pet. ref'd)...........20, 27

*Sanchez v. State*,
   995 S.W.2d 677 (Tex. Crim. App. 1999) ..........................................12, 20

*Shade v. U.S. Congress*,
   942 F. Supp. 2d 43 (D.D.C. 2013).........................................................48

*Smith v. Flack*,
   728 S.W.2d 784 (Tex. Crim. App. 1989) ...............................................37

*Spokane Grain & Fuel Co. v. Lyttaker*,
   109 P. 316 (Wash. 1910) .........................................................................42

*State ex rel. Cason v. Bond*,
   495 S.W.2d 385 (Mo. 1973) ...................................................................42

ix

*State ex rel. Dickson v. Saiz*,
  308 P.2d 205 (N.M. 1957) ...................................................................................42

*State ex rel. Lykos v. Fine*,
  330 S.W.3d 094 (Tex. Crim App. 2011) ........................................................31, 34

*State ex rel. Wis. Senate v. Thompson*,
  424 N.W.2d 385 (Wisc. 1988)...........................................................................42

*State v. Dankworth*,
  672 P.2d 148 (Alaska Ct. App. 1983)................................................................49

*State v. Hanson*,
  793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.) ...................................*passim*

*State v. Holton*,
  997 A.2d 828, 856 (Md. Ct. Spec. App. 2010)..............................................49, 50

*State v. Moff*,
  154 S.W.3d 599 (Tex. Crim. App. 2004) .............................................................29

*State v. Neufeld*,
  926 P.2d 1325 (Kan. 1996)................................................................................49

*State v. Pauling*,
  69 P.3d 331 (Wash. 2003) .................................................................................15

*State v. Robertson*,
  649 P.2d 569 (Or. 1982) ....................................................................................14

*State v. Strong*,
  272 P.3d 281 (Wash. App. 2012) .......................................................................12

*State v. Weinstein*,
  898 P.2d 513 (Ariz. Ct. App. 1995)...............................................................13, 14

*Tenney v. Brandhove*,
  341 U.S. 367 (1951)...............................................................................46, 47, 50

*Tobias v. State*,
  884 S.W.2d 571 (Tex. App.—Fort Worth 1994, pet. ref'd)...................18, 19, 27

*U.S. ex rel. Holder v. Circuit Court of 17th Judicial Circuit,*
624 F. Supp. 68 (N.D. Ill. 1985) ...................................................................12, 14

*United States v. Beery,*
678 F.2d 856 (10th Cir. 1982) ...............................................................................52

*United States v. Brewster,*
408 U.S. 501 (1972)...........................................................................................48, 52

*United States v. Coss,*
677 F.3d 278 (6th Cir. 2012) ..................................................................................12

*United States v. Dowdy,*
479 F.2d 213 (4th Cir. 1973) ..................................................................................49

*United States v. Helstoski,*
442 U.S. 477 (1979)...................................................................................47, 48, 49

*United States v. Jackson,*
180 F.3d 55 (2d Cir. 1999) ................................................................................13, 15

*United States v. Johnson,*
383 U.S. 169 (1966)..........................................................................47, 49, 50, 52

*United States v. Kolter,*
71 F.3d 425 (D.C. Cir. 1995).................................................................................52

*United States v. Lanier,*
520 U.S. 259 (1997)..................................................................................................54

*United States v. Myers,*
635 F.2d 932 (2d Cir. 1980) ............................................................................36, 37

*United States v. Nat'l Treasury Emps. Union,*
513 U.S. 454 (1995)..................................................................................................33

*United States v. Renzi,*
686 F. Supp. 2d 956 (D. Ariz. 2010) ...................................................................52

*United States v. Rose,*
28 F.3d 181 (D.C. Cir. 1994)..................................................................................36

*United States v. Rostenkowski*,
  59 F.3d 1291 (D.C. Cir. 1995)................................................................52

*United States v. Stevens*,
  559 U.S. 460 (2010).............................................................................9

*United States v. Swindall*,
  971 F.2d 1531 (11th Cir. 1992) ....................................................51, 52

*United States v. Velasquez*,
  772 F.2d 1348 (7th Cir. 1985) .............................................................13

*United States v. Williams*,
  553 U.S. 285 (2008)...........................................................................9

*United States v. Zielezinski*,
  740 F.2d 727 (1984)...........................................................................52

*Van Arsdel v. Texas A&M Univ.*,
  628 F.2d 344 (5th Cir. 1980) ..............................................................26

*Virginia v. Black*,
  538 U.S. 343 (2003)........................................................................8, 12

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008).............................................................................9

*Watts v. United States*,
  394 U.S. 705 (1969)............................................................................12

*Whimbush v. People*,
  869 P.2d 1245 (Colo. 1994)................................................................14

*Willborn v. Deans*,
  240 S.W.2d 791 (Tex. Civ. App.—Austin 1951, writ ref'd n.r.e.) ....................25

*Wurtz v. Risley*,
  719 F.2d 1438 (9th Cir. 1983) ........................................................12, 14

**STATUTES**

Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, Tex. Gen. Laws 3586 .......59

Tex. Penal Code § 1.07(a)(9) ..............................................................................11

Tex. Penal Code § 1.07(a)(9)(F) .......................................................................7, 24

Tex. Penal Code § 1.07(a)(41) ............................................................................11

Tex. Penal Code § 1.07(a)(48) ........................................................15, 20, 21, 27, 59

Tex. Penal Code § 36.03(a)(1) ........................................................................7, 10, 24

Tex. Penal Code § 36.03(c) ................................................................................11

Tex. Penal Code § 36.06(a) ........................................................................15, 20, 27

Tex. Penal Code § 39.02(a)(2) .........................................................................53, 54

Tex. Penal Code § 42.07(a)(2) .............................................................................20

**OTHER AUTHORITIES**

1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN
ANNOTATED AND COMPARATIVE ANALYSIS 339 (George D. Braden ed.
1977) ..............................................................................................................41

G. DIX AND R. DAWSON, 43A TEX. PRAC. SERIES: CRIMINAL PRACTICE AND
PROCEDURE § 42.254 (Supp. 2005) ..................................................................34

Senate Research Center, *Budget 101: A Guide to the Budget Process in Texas*
at 3, 10 (Jan. 2013) ..........................................................................................55

Texas Legislative Council, *Facts at a Glance: Comparison of Punishment
and Sentencing Provisions in the 1993 and 2003 Penal Code* (2005) ...............59

LAWRENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-32, 1036 (2d ed.
1988) ................................................................................................................9

Tex. Const. art. III, § 49a ....................................................................................55

Tex. Const. art. IV, § 14............................................................ xvi, 44, 58

Tex. Const. art. XV, §§ 1-5............................................................44

U.S. Const. amend. I ...................................................................8

## STATEMENT OF THE CASE

*Nature of the case:*

The State charged Governor James Richard "Rick" Perry in a two-count indictment with abuse of official capacity and coercion of a public servant. CR4. Governor Perry filed an Application for Pretrial Writ of Habeas Corpus seeking dismissal of the indictment primarily on constitutional grounds. CR11.

*Trial court and judge:*

Honorable Bert Richardson, Judge Presiding, 390th Judicial District, Travis County, Texas, Cause No. D1DC14-100139.

*Course of proceedings and disposition below:*

The district court signed an order on January 27, 2015, denying the Application. CR464. Governor Perry timely filed his notice of appeal, CR438, and the district court certified Governor Perry's right to appeal. 1SUPPCR12-13.

## STATEMENT REGARDING ORAL ARGUMENT

Governor Perry does not seek oral argument in this appeal. The issues, although complex and of constitutional magnitude, have been extensively briefed, and the public interest will be best served by expedited resolution of this appeal. Until it is resolved, the pendency of this case inevitably will have a chilling effect on the current Governor's potential exercise of his veto power over items in the Legislature's forthcoming appropriations bill.[1] Nonetheless, Governor Perry is willing to present oral argument should the Court believe it to be helpful, and he would only ask that any oral argument be scheduled on an expedited basis.

---

[1] The Texas Constitution gives the governor ten days from presentation of a bill to sign or veto it, although this period can be extended until up to twenty days after the regular session ends for appropriations bills passed at the very end of the session. Tex. Const. art IV, § 14. Since the Regular Session of the 84th Legislature will end not later than June 1, 2015, Governor Abbott will have to exercise any veto over items in any appropriations bill passed during the regular session by no later than about June 21, 2015, although the deadline could be sooner if the bill passes the Legislature before the end of the session.

## ISSUES PRESENTED

1. **Free Speech.** Is the offense of Coercion of a Public Servant, as defined in Texas Penal Code Sections 36.03(a)(1) and 1.07(a)(9)(F), facially invalid as a violation of the First Amendment to the U.S. Constitution?

    A. **Overbreadth.** Is the offense unconstitutionally overbroad because it prohibits a substantial amount of protected speech, including threats to take lawful action?

    B. **Strict Scrutiny.** Does the offense fail to survive strict-scrutiny review because, far from being necessary to serve a compelling state interest, its applications are either redundant or unconstitutional?

2. **Vagueness.** Is the offense of Coercion of a Public Servant, as defined in Texas Penal Code Sections 36.03(a)(1) and 1.07(a)(9)(F), void for vagueness on its face because all of its applications are either redundant or unconstitutional, thus requiring guesswork about its scope?

3. **Cognizability.** Did the district court err by holding that Governor Perry's as-applied challenges to the indictment were not cognizable in a pretrial habeas proceeding, where those challenges can be decided based solely on the face of the indictment and the applicable statutes, and the challenges involve a right not to be tried which can only be vindicated by a pretrial remedy?

4. **Separation of Powers.** Did the district court err by failing to dismiss the indictment because the prosecution unconstitutionally interferes with the governor's veto power, which is entrusted to the governor's sole discretion by the Texas Constitution?

5. **Immunity.** Did the district court err by failing to dismiss the indictment because Governor Perry is immune from prosecution for the acts alleged on the face of the indictment under both the Texas Speech or Debate Clause and the related doctrine of legislative immunity?

6. **Count I As-Applied.** Did the district court err by failing to dismiss Count I because the abuse-of-official-capacity statute does not give fair notice that it might apply to gubernatorial vetoes and is therefore unconstitutionally vague as applied to the facts alleged on the face of the indictment?

7. **Count II As-Applied.** Did the district court err by failing to dismiss Count II because the statute is unconstitutional as applied to the facts alleged on the face of the indictment?

    A.    **Vagueness.** Is the coercion statute unconstitutionally vague as applied to the facts alleged on the face of the indictment because it fails to give fair notice that it might apply to threats of *lawful* action?

    B.    **Free speech.** Is the coercion statute unconstitutionally vague as applied to the facts alleged on the face of the indictment because threats to commit *lawful* action are protected speech under the First Amendment?

## STATEMENT OF THE FACTS

Last summer, a Travis County grand jury returned a two-count indictment against then-Governor James Richard "Rick" Perry. CR4. Count I alleges that Governor Perry committed Abuse of Official Capacity under Section 39.02(a) of the Texas Penal Code. The gist of this charge is that he "misused" government property by vetoing funding for the Travis County Public Integrity Unit ("PIU"). *Id*. Count II alleges that Governor Perry committed Coercion of a Public Servant under Sections 36.03(a)(1) and 1.07(a)(9)(F) of the Texas Penal Code. This charge alleges that he attempted to "influence" Travis County District Attorney Rosemary Lehmberg by threatening to veto funding for the PIU. CR5. In short, the charges are that Governor Perry broke the law by threatening and issuing a veto. Governor Perry made bond and was processed by the Travis County Sheriff. CR10.

Ten days after the indictment was returned, Governor Perry filed his Application for Pretrial Writ of Habeas Corpus (the "Application"), which sought to bar the prosecution and dismiss both counts of the indictment. CR11. The Application made nine constitutional challenges to Count I and twelve challenges (all of which but one were on constitutional grounds) to Count II. CR17-19. The district court gave the State almost three months to file its response, which was not

1

filed until November 7, 2014. CR274. Governor Perry promptly filed a reply in support of the Application. CR391.

Fourteen nationally-known constitutional scholars filed an *amicus curiae* brief in support of Governor Perry's Application. CR367-90. The *amici* supported Governor Perry's prayer for dismissal of Count I on two grounds: (1) that the constitutional doctrine of Separation of Powers precluded the Legislature from criminalizing the exercise of a constitutionally authorized gubernatorial veto; and (2) that Governor Perry cannot be prosecuted for his veto because he is entitled to absolute legislative immunity for any exercise of his veto power. CR375-84. The *amici* also supported Governor Perry's prayer for dismissal of Count II on the ground that it criminalizes speech protected by the First Amendment. CR384-89.

In late January 2015, the district court denied the Application without an oral hearing. CR464. The court rejected on the merits Governor Perry's facial overbreadth and vagueness challenges to the coercion statute on which Count II is based. CR474-82. The court ruled that the remainder of Governor Perry's constitutional challenges were not cognizable in a pretrial habeas proceeding because they supposedly raised merely as-applied, rather than facial, constitutional arguments. CR468-73. While the court acknowledged that these arguments were "compelling" and "may be relevant at a later time," it declined to reach their merits

2

on the mistaken belief that "the court's hands are tied" under existing case law regarding cognizability. CR472-73. As a result, the district court has set this case on a path to trial.[2]

## SUMMARY OF THE ARGUMENT

Former Governor Rick Perry is being prosecuted for a veto and an alleged veto threat. At stake is not just the freedom of one man. The veto power will either be preserved and continue its vital role as a check on the other branches of government in this State, or its use will only be contemplated against the backdrop of possible criminal prosecution. Beyond that, all Texas public officials may find their speech stifled by an overbroad criminal statute that restricts their ability to negotiate and manage government affairs.

Fortunately, multiple provisions of the Texas and U.S. Constitutions proscribe the continuance of this misguided prosecution. The constitutionally-mandated separation of powers protects the Governor's veto authority and discussions related to it from interference by the other branches, such as through penal laws enacted by the Legislature and enforced by the judiciary. Freedom of speech protects the governor and the rest of the public from the chilling effect of

---

[2] The district court also held that Governor Perry's one statutory challenge to Count II was not cognizable in a pretrial habeas proceeding, CR482, but the court sustained this same statutory challenge in ruling on Governor Perry's motion to quash. CR459-62 (sustaining challenge to Count II for failing to negate statutory exception and granting State leave to amend).

3

vague and overbroad laws that sweep up protected speech in a misguided effort to ensure that no possible misconduct escapes punishment. On its face, without the need for any evidence, the indictment must be dismissed because it runs afoul of these constitutional guarantees.

Governor Perry filed a pretrial application for habeas corpus so that dismissal could occur immediately, before the indictment did further personal damage to him or caused further distraction from the public's business. He raised two facial challenges to the coercion statute, which targets the content of speech on its face and is presumptively unconstitutional. He also raised a number of as-applied challenges to the coercion statute and the abuse-of-official-capacity statute. In one form or another, these challenges all sought to vindicate the bedrock constitutional principles of separation of powers and freedom of speech.

The district court denied relief without fully grappling with Governor Perry's challenges. The court addressed the merits of Governor Perry's two facial challenges to the coercion statute, but the court never acknowledged the dramatic overbreadth of that statute, much less reconciled it with freedom of speech. The court then disposed of Governor Perry's other challenges, including the ones based on separation of powers, on procedural grounds. While acknowledging that these challenges were, in the court's own words, "persuasive" and "compelling," the court

4

fixated on the "as-applied" label to hold that these challenges were never cognizable in a *pretrial* habeas corpus proceeding and can only be brought, if at all, after the burden of trial.

Governor Perry now seeks relief from this Court to rectify these errors. As shown below, the coercion statute is facially overbroad and cannot survive strict scrutiny. By criminalizing all statements by public servants that threaten *lawful* action and merely have the effect of influencing another public servant, the statute condemns ordinary negotiation, management, and policy-making within state and local governments across Texas. The First Amendment's protections are at their zenith with regard to such core political speech. Compounding this problem is the coercion statute's facial vagueness. Reasonable people must guess at what conduct is prohibited by the statute's constitutionally problematic reference to threats (which are not statutorily required to be "unlawful"). And the statute creates a trap for the unwary by defining the crime with reference to consequences ("influencing a public servant") without requiring that offenders have any intent or knowledge regarding those consequences.

The district court also misapprehended the nature of Governor Perry's as-applied challenges. Because these challenges can be decided from the face of the indictment, unlike typical as-applied challenges which require development of a

5

factual record at trial, Governor Perry's as-applied challenges are ripe for review and cognizable in pretrial habeas. All the factors underlying Texas habeas jurisprudence support cognizability here. Indeed, the most wasteful and prejudicial course would be to proceed to trial with the legally appropriate means of pre-trial resolution so close at hand. In addition, Governor Perry's challenges based on the Texas Constitution's Separation of Powers Clause, its Speech or Debate Clause, and legislative immunity all involve *a right not to be tried*, which—like challenges based on double jeopardy—must be vindicated *before* trial in order to have any meaning at all. The paramount public interest in the effective functioning of state institutions in general, and the untrammeled exercise of the line-item veto by the governor in particular, likewise counsels in favor of prompt resolution of these challenges. For all these reasons, Governor Perry's as-applied challenges are cognizable in pretrial habeas.

On the merits of his as-applied challenges, Governor Perry concurs with the district court—the challenges are indeed "persuasive" and "compelling." The Texas Constitution requires that the governor's veto power, including communications about the use of that power, be kept free from interference by other branches. And because governors act in a legislative capacity when exercising and communicating about the veto power, they enjoy the protection of the Texas

6

Speech or Debate Clause and legislative immunity, both of which bar prosecution for legislative activity. Finally, Governor Perry had no fair notice that the abuse-of-official-capacity statute would apply to vetoes, nor that the coercion statute would apply to threats of lawful action. And in any event, Texas case law squarely holds that threats to take lawful action are protected speech under the First Amendment and cannot be criminalized.

For all these reasons, Governor Perry asks the Court to halt this unconstitutional prosecution by granting his application for habeas relief and ordering the indictment dismissed, thereby eliminating any further stifling effect on the Office of the Governor.

## ARGUMENT

### I. Count II must be dismissed because the coercion statute is facially unconstitutional under the First Amendment.

Despite the requirements of the First Amendment to the U.S. Constitution, the district court's scrutiny of the coercion statute underlying Count II was far from strict. CR475-478. The coercion statute squarely targets speech with a certain content—i.e., "threat[s] . . . to take or withhold official action" that "influence" public servants. Tex. Penal Code §§ 1.07(a)(9)(F), 36.03(a)(1). The statute is therefore subject to perhaps the most searching scrutiny known to American law. Because of the special, almost sacred status our society accords to freedom of speech,

7

even well-written statutes often fail to withstand the rigors of strict scrutiny. *A fortiori*, poorly-written statutes like the one at issue here—which smothers a wide swath of protected speech under the banner of criminality and serves no purpose not already served by more narrowly tailored laws—must be struck down. CR18,30-41,384-89,409-13.

The First Amendment, which has been incorporated by the Due Process Clause of the Fourteenth Amendment to apply to the states, *e.g.*, *Virginia v. Black*, 538 U.S. 343, 358 (2003), provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Core political speech, such as the alleged statement by Governor Perry that he would exercise his veto power if Lehmberg did not resign, lies at the very heart of First Amendment protection. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) (courts must apply "exacting scrutiny" to laws burdening core political speech); *Meyer v. Grant*, 486 U.S. 414, 422 (1988) (First Amendment protection is "at its zenith" for core political speech). This heightened protection stems from our "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). "Content-based regulations are presumptively invalid, and it is rare that a regulation restricting speech because of its content will ever be permissible." *Ex parte*

8

*Thompson*, 442 S.W.3d 325, 348 (Tex. Crim. App. 2014) (internal footnote and quotation marks omitted).

To succeed in a typical facial attack, a defendant must establish "that no set of circumstances exists under which [the statute] would be valid." *United States v. Stevens*, 559 U.S. 460, 472 (2010). However, in the context of the First Amendment, the Supreme Court recognizes "a second type of facial challenge," whereby a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n.6 (2008) (internal quotation marks omitted)). Thus, a statute is facially unconstitutional and violates the overbreadth doctrine if "it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). A law that is overbroad cannot be validly applied against any individual. LAWRENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-32, 1036 (2d ed. 1988). Courts must not "uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Thompson*, 442 S.W.3d at 350 (quoting *Stevens*, 559 U.S. at 480).

In addition, a statute regulating the content of speech—such as the coercion statute's prohibition of certain "threats"—is subject to "strict scrutiny" and will be

9

invalidated unless it constitutes the "least restrictive means" of effectuating a "compelling [state] interest." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 658, 666 (2004). A statute that prohibits protected speech "is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve," and "the burden is on the Government to prove that the proposed alternatives would not be as effective as the challenged statute." *Id.* at 665.

## A. The coercion statute is facially overbroad.

The statutory language that forms the basis for Count II is written in broad strokes. It begins with Section 36.03(a)(1), which makes it a crime to coerce a public servant. An individual commits an offense if he or she, "by means of coercion . . . influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty." Tex. Penal Code § 36.03(a)(1). "Coercion" is then defined in the definition section of the Penal Code as

a threat, however communicated:

(A)   to commit an offense;

(B)   to inflict bodily injury in the future on the person threatened or another;

10

(C)     to accuse a person of any offense;

(D)     to expose a person to hatred, contempt, or ridicule;

(E)     to harm the credit or business repute of any person; or

(F)     to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

*Id.* § 1.07(a)(9).    Governor Perry is charged with making a threat under subpart (F)—that is, threatening to take official action.   "Public servant" is also defined broadly to encompass all aspects of state government, including any "officer, employee, or agent of government," "a juror or grand juror," "an arbitrator," a political candidate, and even "an attorney at law or notary public when participating in the performance of a government function."   *Id.* § 1.07(a)(41).   The coercion statute contains a single, narrow exception, for "member[s] of the governing body of a governmental entity."   *Id.* § 36.03(c).

To be clear, Governor Perry is challenging the facial constitutionality of Section 36.03(a)(1) only in conjunction with the definition of coercion in Section 1.07(a)(9)**(F)**.  He is not challenging either of these provisions standing alone.

Some applications of Sections 36.03(a)(1) and 1.07(a)(9) do not violate the First Amendment.  For example, a state can outlaw threats of violence against a public servant without raising any First Amendment concerns.   "True threats"—which the U.S. Supreme Court has defined as "statements where the

11

speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"—have no First Amendment protection. *Black*, 538 U.S. at 359 (no protection for cross burning that communicates threat of bodily harm or death); *see also Watts v. United States*, 394 U.S. 705, 707-08 (1969) (no protection for threat to assassinate the President of the United States). Threats to commit an unlawful act are also generally not protected. *See Wurtz v. Risley*, 719 F.2d 1438, 1442 (9th Cir. 1983) (no protection for threat to commit rape); *U.S. ex rel. Holder v. Circuit Court of 17th Judicial Circuit*, 624 F. Supp. 68, 71 (N.D. Ill. 1985) (no protection for threat to damage property). And some courts have also held that the First Amendment does not protect extortion (i.e., threats of harm or defamation made to obtain a wrongful profit). *See United States v. Coss*, 677 F.3d 278, 289-90 (6th Cir. 2012) (no protection for threat to damage reputation made with intent to wrongfully obtain property); *cf. Sanchez v. State*, 995 S.W.2d 677, 687-88 (Tex. Crim. App. 1999) (no protection for sexual harassment made with intent to wrongfully obtain sexual favors); *see also State v. Strong*, 272 P.3d 281, 287 (Wash. App. 2012) (noting that extortion involves "compelling of the victim to give up property" and is thus "an extension of theft").

"Speech does not lose its protected character, however, simply because it may embarrass others or coerce them into action." *N.A.A.C.P. v. Claiborne Hardware*

12

*Co.*, 458 U.S. 886, 910 (1982). Most threats do not fall into the categories of unprotected speech listed above and instead enjoy "broad protection" under the First Amendment. *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1014 (7th Cir. 1984). Non-extortionate threats to commit *lawful* action are protected by the First Amendment, even if they influence another public servant. *See State v. Hanson*, 793 S.W.2d 270, 273 (Tex. App.—Waco 1990, no pet.) ("Coercion of a lawful act by a threat of lawful action is protected free expression."). And courts have recognized that "a threat to cause economic loss is not inherently wrongful." *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999) (listing, as examples, a consumer's threat to sue for breach of warranty or file a complaint with a consumer protection agency). Indeed, threats are "common in everyday business and personal interactions." *State v. Weinstein*, 898 P.2d 513, 515 (Ariz. Ct. App. 1995) (listing, as examples, car owner's threat to tell friends not to patronize a dealer unless repairs are made, a store owner's threat to report a customer to a credit reporting agency unless bills are paid, and a mother's threat to report her ex-husband to the court if he fails to pay back child support). Threats are also common in American political discourse, often being inseparable from ideas or advocacy. *See United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) (giving, as an example, a threat to picket an organization to induce social or political action). Even threats to commit

13

minor criminal offenses (such as threats of civil disobedience) can be protected speech. *See Wurtz*, 719 F.2d at 1442 (listing, as examples, threats of sit-ins, marches in the street, and mass picketing); *Holder*, 624 F. Supp. at 70 (listing additional examples).

Given the broad protection accorded to threats under the First Amendment, courts have not hesitated to strike down broadly-written coercion and extortion laws on grounds of overbreadth. *See, e.g.*, *Wurtz*, 719 F.2d at 1441-42 (striking down Montana intimidation statute prohibiting threats "to commit any criminal offense," no matter how minor or the purpose of the threat); *Holder*, 624 F. Supp. at 71 (striking down Illinois intimidation statute prohibiting threats to "commit any criminal offense"); *Weinstein*, 898 P.2d at 515 (striking down extortion statute that prohibited obtaining property by threats to expose disreputable information, which impinged on legitimate negotiation tactics); *Whimbush v. People*, 869 P.2d 1245, 1247-48 (Colo. 1994) (striking down extortion statute prohibiting making any threat to harm with intent to induce action, which improperly "covers threats of collective action in support of group demands"); *State v. Robertson*, 649 P.2d 569, 589-90 (Or. 1982) (striking down coercion statute prohibiting a wide range of threats merely intended to induce some action by another); *City of Seattle v. Ivan*, 856 P.2d 1116, 1120 (Wash. App. 1993) (striking down city's coercion ordinance which prohibited

14

a wide range of threats merely intended to induce some action by another). Other courts have given coercion and extortion statutes narrow constructions to avoid constitutional issues. *See, e.g.*, *Jackson*, 180 F.3d at 70 (construing extortion statute to only include "wrongful" threats to obtain property from another, and recognizing that some threats to obtain property are legitimate negotiation tactics); *People v. Iboa*, 207 Cal. App. 4th 111, 120 (2012) (statute proscribing use of "threats" to interfere with duties of executive officer construed as limited to "threats of unlawful violence"); *State v. Pauling*, 69 P.3d 331, 387-89 (Wash. 2003) (narrowing otherwise overbroad extortion statute to only include "wrongful" threats made with intent to obtain property from another).

As written, Sections 36.03(a)(1) and 1.07(a)(9)(F) criminalize a breathtaking amount of constitutionally protected speech. As explained above, they purport to criminalize (with only one exception) *any* threat by a public servant to take *any* official action as a means of merely *influencing* the conduct of *any other* public servant. Importantly, the statute is not limited to threats of "unlawful" conduct, *see* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" as "criminal or tortious or both"), in contrast to other similar statutes. *See, e.g.*, *id.* § 36.06(a) (illegal to "intentionally or knowingly . . . threaten[] to harm another by an *unlawful* act" in retaliation for public service (emphasis added)).

15

The implications are astounding, as they would render many common scenarios in state government criminal. For instance, a manager could not threaten to fire or demote a government employee for poor performance. A government employee could not threaten to resign unless her pay or benefits were increased, or to file a complaint unless workplace harassment were stopped. A judge could not threaten to sanction an attorney for the State, to declare a mistrial if jurors did not avoid misconduct, or to deny warrants that failed to contain certain information. An inspector general could not threaten to investigate an agency's financial dealings. A prosecutor could not threaten to bring charges against another public servant. A university administrator could not threaten to withdraw funding from a professor's research program. A public defender could not threaten to file a motion for suppression of evidence to secure a better plea bargain for his client. A prosecutor could not communicate to a judge in chambers his intent to file a potentially embarrassing motion to recuse unless the judge voluntarily recused herself. Were it not for the fact that members of a "governing body" are excepted from the statute, even members of the House and Senate would presumably be breaking the law when they negotiated among themselves to resolve differences in conference committee.[3]

---

[3] Indeed, even a threat directed against a third party can trigger criminal liability if intended to influence a public servant. *See Phillips v. State*, 401 S.W.3d 282, 289 (Tex. App.—San Antonio 2013, pet. ref'd) (upholding conviction of 911 caller who threatened to kill particular police officer and thus influenced which officer a 911 dispatcher sent to the scene). For example, a government

16

The list is virtually endless. Statements so intrinsic to government, particularly when they relate to matters of public policy, lie at the core of First Amendment protection. *See Meyer*, 486 U.S. at 422 (First Amendment protection is "at its zenith" for core political speech); *Garrison v. La.*, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.").

Inescapably, the literal words of Sections 36.03(a)(1) and 1.07(a)(9)(F) prohibit a striking number of ordinary activities that involve constitutionally protected speech, much of it political in nature. In fact, as written, the statutory language would make the ordinary functioning of government impossible. This is a textbook case of overbreadth.

**B.      The coercion statute is not the least restrictive means of serving a compelling state interest.**

The State cannot salvage Sections 36.03(a)(1) and 1.07(a)(9)(F) by arguing that they are the least restrictive means of achieving a compelling state interest. Any compelling state interests are already addressed by the other types of threats that constitute "coercion" under Section 1.07(a)(9). The State surely has a compelling interest in preventing threats of unlawful or criminal acts against public servants, but

---

employee who threatened a trespasser and thereby caused a nearby peace officer to intervene would be a criminal under these provisions.

17

Section 1.07(a)(9)**(A)** already covers threats "to commit an offense." And while the State has a compelling interest in preventing threats of violence against public servants, *Tobias v. State*, 884 S.W.2d 571, 580-81 (Tex. App.—Fort Worth 1994, pet. ref'd), this interest is already addressed by Section 1.07(a)(9)**(B)'s** coverage of threats "to inflict bodily injury in the future on the person threatened or another." And to the extent extortionate threats against public servants are not already covered by these prior two provisions, Sections 1.07(a)(9)**(C)** through **(E)** address threats of defamation and invasion of privacy. In short, there is no compelling state interest left to serve by Section 1.07(a)(9)**(F)'s** catch-all coverage of threats "to take or withhold action as a public servant." The only discrete function of this provision, when combined with Section 36.03(a)(1), is to prohibit speech protected by the First Amendment.

An analogous situation was presented in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), in which the Court of Criminal Appeals struck down a subsection of the Penal Code which prohibited sex-related online communications with minors. That statute (like the one here) was a "content-based regulation" and "presumptively invalid." *Id.* at 15. According to the court, the statute was not narrowly tailored because "*everything* that [it] prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to

18

minors, solicitation of a minor, or child pornography) or is constitutionally protected," such as sexually explicit works of literature and popular television shows and movies. *Id.* at 20 (emphasis in original). The same logic applies to Sections 36.03(a)(1) and 1.07(a)(9)(F). *See also Thompson*, 442 S.W.3d at 349-50 (striking down as overbroad a criminal photography statute because, while the statute had some "legitimate applications," it "appl[ied] to any non-consensual photograph, occurring anywhere, as long as the actor ha[d] an intent to arouse or gratify sexual desire," including photographs of celebrities and public sunbathers).

To support its ruling, the district court below cited several cases where Texas courts rejected facial First Amendment challenges to statutory language that was narrowly drawn and not constitutionally overbroad. CR475-478. But these cases deal with different statutory sections and distinguishable facts. The Second Court of Appeals rejected a First Amendment challenge to Sections 36.03(a)(1) and 1.07(a)(9)(**A**), under which a private citizen was charged with threatening to "commit an offense" (murder and assault) against three court-of-appeals justices. *Tobias*, 884 S.W.2d at 580-82. The Fourteenth Court of Appeals upheld a retaliation statute which prohibited "threat[s] to harm another by an *unlawful act*." *Puckett v. State*, 801 S.W.2d 188, 192 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (emphasis added) (quoting former Tex. Penal Code § 36.06(a)). The Court of

Criminal Appeals upheld a harassment statute which prohibited "threat[s], by telephone or in writing, to take *unlawful action*." *Collection Consultants, Inc. v. State*, 556 S.W.2d 787, 792 (Tex. Crim. App. 1977) (emphasis added) (quoting former Tex. Penal Code § 42.07(a)(2)). The Fourth Court of Appeals upheld a theft statute which prohibited extortion—i.e., "unlawfully appropriat[ing]" property by means of "coercion" as defined in Section 1.07(a)(9)**(D)** and **(E)** (i.e., threats of defamation). *Roberts v. State*, 278 S.W.3d 778, 790-93 (Tex. App.—San Antonio 2008, pet. ref'd). Finally, the Court of Criminal Appeals upheld a sexual harassment statute which prohibited public servants from conditioning a right or privilege on submission to sexual advances—conduct which the court analogized to extortion. *Sanchez*, 995 S.W.2d at 687-88.

In every one of these cases, the statutes at issue were narrowly written to focus on unprotected speech. None of these cases stands for the broad proposition that all threats, regardless of their content, are unprotected speech, much less that the State has a compelling interest in preventing their communication. And none of these cases dealt with, much less upheld, the much broader statutory language at issue here, which is not limited to threats to "unlawfully" take or withhold official action. *See* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" to mean "criminal or tortious or

both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege").[4]

The only case to address the constitutionality of the statutory language at issue here affirmed the dismissal of an indictment which was based on a threat of lawful conduct. *See Hanson*, 793 S.W.2d at 273. As discussed below in connection with Governor Perry's vagueness challenges, *Hanson* held that a prior version of Section 36.03(a)(1) was unconstitutionally vague as applied to a threat of lawful action because "*[c]oercion of a lawful act by a threat of lawful action is protected free expression*," and a reasonable person could only guess whether "the term 'threat' encompass[ed] a threat of lawful action or only prohibit[ed] a threat of unlawful action." *Id.* at 272 (emphasis added). While *Hanson* expressly declined to reach the question of the statute's overbreadth, *id.* at 273, its First Amendment holding supports that challenge as well.

Text, precedent, and common sense all point to the same conclusion: Sections 36.03(a)(1) and 1.07(a)(9)(F), in conjunction, would essentially criminalize the ordinary give and take of politics as well as the administration of state government, all in violation of the First Amendment and without serving any compelling state interest. For these reasons, the statutory language is facially

---

[4] As the district court recognized, Governor Perry intends to assert a "public duty" justification defense at trial under Texas Penal Code Section 9.21. CR472n.7.

unconstitutional and void; the district court erred as a matter of law in concluding otherwise; and this Court should dismiss Count II of the indictment.

**II.    Count II also must be dismissed because the coercion statute is unconstitutionally vague on its face.**

Besides its overbreadth, the coercion statute is fatally unclear about the conduct it purports to prohibit.  CR18,35-41,413-16.  The district court reasoned, erroneously, that because *some* conduct (such as threats of violence) are clearly covered by the language of the statute, the language must survive a facial vagueness challenge.  CR473-78.  But laws regulating speech are measured by stricter standards of certainty.  As with overbreadth, Governor Perry is challenging the facial vagueness of Sections 36.03(a)(1) and 1.07(a)(9)(F) when read together, not either standing alone.

Due process requires that criminal laws be sufficiently clear in two distinct respects.  First, a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited.  *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1991) (citing *Grayned v. Rockford*, 408 U.S. 104, 108 (1972)).  Second, the law must establish determinate, explicit guidelines to prevent arbitrary enforcement by the government.  *Long*, 931 S.W.2d at 287 (citing *Grayned*, 408 U.S. at 108-09).  Thus, a statute is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to

22

its meaning and differ as to its application." *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1971).

In addition, when First Amendment freedoms are implicated, as here, the law must be sufficiently definite to avoid chilling protected expression. *Long*, 931 S.W.2d at 287-88 (citing *Grayned*, 408 U.S. at 109). "When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness demands a greater degree of specificity than in other contexts." *Long*, 931 S.W.2d at 287 (quoting *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) (quotation marks omitted)). That heightened specificity is necessary to preserve the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal ellipsis and quotation marks omitted). When a vagueness challenge involves First Amendment considerations, the usual strictures of facial challenges are relaxed; a criminal statute may be held facially invalid for vagueness even though it may not be unconstitutional in every application or even as applied to the defendant's conduct. *Long*, 931 S.W.2d at 288 (citing *Gooding v. Wilson*, 405 U.S. 518 (1972)).

Sections 36.03(a)(1) and 1.07(a)(9)(F) raise a fundamental and vexing question for any public servant who wishes to comply with the law: does the

23

statutory language actually prohibit *any* threat to "take or withhold action as a public servant" that merely "influences" another public servant? As *Hanson* recognized, substantial uncertainty exists about whether this language was truly intended to embrace threats of *lawful* action, which are protected by the First Amendment. *See Hanson*, 793 S.W.2d at 272-73 (holding this statutory language was unconstitutionally vague as applied to threats of lawful action).[5] Moreover, a similar uncertainty exists about whether the statute was intended to cover threats of *unlawful* action, as such threats are already addressed by subparts (A) through (E) of the "coercion" definition in Section 1.07(a)(9).

Further compounding the vagueness of these sections is the fact that the offense requires no culpable mental state. Technically, an offense could be committed under these provisions whenever a public servant makes a threat "to take or withhold [official] action," Tex. Penal Code § 1.07(a)(9)(F), as long as the threat merely *has the effect of* "influenc[ing]" another public servant. *Id.* § 36.03(a)(1). Indeed, the statutory language does not require that an offender even *know* about the threat's influence on the other public servant. Even a threat of official action inadvertently heard and acted upon by another public servant could be a criminal offense. The absence of a culpable mental state means that citizens cannot

_____

[5] This uncertainty is heightened now because public servants might reasonably rely on *Hanson*'s holding that the First Amendment protects threats of lawful action.

24

determine whether their conduct is prohibited—a plain violation of due process. *See Colautti v. Franklin*, 439 U.S. 379, 394 (1979) (statute that criminalized killing a viable fetus held unconstitutionally vague where no scienter was required with respect to fetus's viability, thus creating "a trap for those who act in good faith"); *Long*, 931 S.W.2d 285 at 290 (striking down harassment statute as unconstitutionally vague in part because statutory requirement of a police report "does little or nothing to inform an ordinary person that his conduct is forbidden because the subsection contains no culpable mental state"; "[t]he wording of the statute does not require the defendant to *know* that the victim has made such a report" (emphasis in original)).

The vagueness of the statutory language is underscored by the fact that it confusingly appears to characterize as "coercion" a threat that does not even rise to the level of duress. For example, a public official who resigns under duress is allowed to rescind the resignation and recover the office. *Crouch v. Civil Serv. Comm'n of Tex. City*, 459 S.W.2d 491, 494 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). Yet had Lehmberg resigned because of Governor Perry's alleged veto threat, she could not have shown duress. "[A] threat *to do what one has a legal right to do*, as bringing suit in court to enforce a claimed civil right, cannot constitute duress." *Willborn v. Deans*, 240 S.W.2d 791, 793-95 (Tex. Civ.

25

App.—Austin 1951, writ ref'd n.r.e.) (emphasis added) (holding that sheriff could not recover his office on grounds of duress after being pressured out of office by district attorney's threat to bring removal proceedings). Similarly, a threat that "delineat[es] the options available" and forces a public official to make "a reasoned choice between two validly imposed alternatives" is not duress as a matter of law. *Van Arsdel v. Tex. A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980) (holding that university employee could not recover his position on grounds of duress after resigning due to university's threat to bring dismissal proceedings against him based on accusations of sexual harassment).

The district court rejected Governor Perry's facial vagueness challenge to Sections 36.03(a)(1) and 1.07(a)(9)(F) without adequately addressing the substance of that challenge. The trial court first noted that the word "threat" has established dictionary definitions. CR480 (quoting *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006)). Most words do. But these definitions fail to resolve the fundamental source of vagueness in the statutory language—i.e., whether the "threat" described in Section 1.07(a)(9)(F) refers to threats of *lawful* action, *unlawful* action, or both. The trial court also cited two cases which held that threat-related language was not unconstitutionally vague. CR481. But neither of those cases addressed the language at issue here. *Tobias* upheld Section 36.03(a)(1) to the extent it involved

26

coercion under Section 1.07(a)(9)**(A)** (i.e., threats to commit an offense). *See* 884 S.W.2d at 580-82. *Roberts* upheld a statute prohibiting theft by means of coercion under Section 1.07(a)(9)**(D)** and **(E)** (i.e., threats of defamation). *Roberts*, 278 S.W.3d at 790-93. In short, no case has upheld the statutory language at issue here—Section 36.03(a)(1) to the extent it involves coercion under Section 1.07(a)(9)**(F)** (i.e., threats to take or withhold official action). And this language is materially broader—and vaguer—than any of the language in the other subsections of Section 1.07(a)(9). It does not contain any limitation to threats of "unlawful" conduct. *See* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" to mean "criminal or tortious or both").

As discussed above, the only case to address this language held that it was unconstitutionally vague as applied to threats of lawful conduct. *See Hanson*, 793 S.W.2d at 273. *Hanson* expressly declined to reach the question of facial vagueness. *Id.* However, because the vagueness identified by *Hanson* is a pervasive feature of the statutory language and trenches on First Amendment freedoms to an intolerable degree, Sections 36.03(a)(1) and 1.07(a)(9)(F) are also facially vague.

The Legislature has enacted other statutes addressing threats against public servants that do not suffer from these vagueness defects, if only because they require the threats to be "unlawful." *See, e.g.*, Tex. Penal Code § 36.06(a) (offense to

27

"intentionally or knowingly . . . threaten to harm another by an *unlawful* act" in retaliation for public service or to interfere with public service (emphasis added)). But the Legislature failed to do so when it last amended and melded Sections 36.03(a)(1) and 1.07(a)(9)(F) in 1994. For the reasons given above, these provisions are unconstitutionally vague on their face, and Count II of Governor Perry's indictment is void and must be dismissed.

## III.  Governor Perry's other constitutional challenges are all cognizable in a pretrial habeas proceeding.

Although the district court addressed the merits of the facial overbreadth and vagueness challenges discussed above, the court held that the other constitutional attacks in Governor Perry's Application were merely as-applied challenges and thus not cognizable in a pretrial habeas proceeding. CR468-73. This was error. CR14-16,41-42,48-49,409,417-19.

Governor Perry acknowledged in both his writ and his consolidated reply that a true as-applied challenge to the constitutionality of a statute usually cannot be decided in a pretrial writ. CR41-42,417-19. But although most of Governor Perry's challenges are "as applied" in the sense that they only attack certain applications of the statutes, they are the functional equivalent of facial challenges. They rely only on the indictment and the statutes, not the underlying facts or circumstances to be proven at a hearing or trial, and so should be cognizable in a pretrial habeas

28

proceeding. Moreover, because Governor Perry seeks to vindicate constitutional rights and powers that are essential to the efficacy of his former office and of paramount public importance, his claims should be recognized as cognizable and addressed before trial. Any other result would compromise if not vitiate the constitutional rights and powers he seeks to vindicate. The mere act of deferring resolution until trial is constitutionally offensive. This Court should therefore address the merits of Governor Perry's claims now and, after doing so, dismiss the indictment.

Whether an issue can be raised in a habeas petition is a legal determination that appellate courts review *de novo*. *See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005); *see also State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (standard of review is *de novo* for legal determinations that do not turn on evaluation of witness's credibility or demeanor or on disputed facts). *De novo* review is also appropriate for questions concerning the application of law to facts "when a court confronts important, clearly defined issues of first impression." *Henderson v. State*, 962 S.W.2d 544, 551 (Tex. Crim. App. 1997).

### A. General principles of cognizability

According to the Court of Criminal Appeals, "[p]retrial habeas should be reserved for situations in which the protection of the applicant's substantive rights or

29

the conservation of judicial resources would be better served by interlocutory

review." *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. 2001). The writ is generally

available in three categories of cases:

> First, the accused may challenge the State's power to restrain him at all.
> Second, the accused may challenge the manner of his pretrial restraint,
> i.e., the denial of bail or conditions attached to bail. Third, the accused
> may raise certain issues which, if meritorious, would bar prosecution or
> conviction.

*Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (footnotes omitted).

The Court of Criminal Appeals has imposed prudential, but not

constitutionally-mandated, limits on the issues that are cognizable in a pretrial

habeas proceeding:

- Pretrial habeas should not be entertained when there is an adequate
  remedy by appeal. It should be reserved for situations in which the
  protections of the applicant's substantive rights or the conservation
  of judicial resources would be better served.[6]

- Because an interlocutory appeal is an extraordinary remedy,
  appellate courts need to be careful to ensure that a pretrial writ is
  "not misused" to secure pretrial appellate review of matters that
  "should not be put before appellate courts at the pretrial stage"—a
  variation of ripeness.[7]

- Aside from double-jeopardy issues, pretrial habeas is not
  appropriate when the question presented, even if resolved in the

---

[6] *Weise*, 55 S.W.3d at 619-20.

[7] *Ex Parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010) (quoting *Smith*, 178 S.W.3d at 801); *see also Weise*, 55 S.W.3d at 619-21.

applicant's favor, would not result in immediate release from restraint.[8]

- Pretrial habeas should not be used when a complete factual record is required to address the claim, which includes most as-applied challenges to the constitutionality of the statute upon which the offense is based.[9]

Issues the Court has held to be cognizable in pretrial habeas include the following:

- A claim of double jeopardy because, if granted, the trial would be barred, resulting in a conservation of judicial resources, and the right would be denied unless resolved prior to trial.[10]

- A claim of collateral estoppel because, if granted, the relitigation of the issue would be barred, although it may not bar an actual trial.[11]

- A claim that the face of the indictment demonstrates that any prosecution is barred by the statute of limitations, unless this is a "reparable" pleading defect.[12]

---

[8] *Weise*, 55 S.W.3d at 619; *Doster*, 303 S.W.3d at 724.

[9] *Ellis*, 308 S.W.3d at 79; *see also Lykos*, 330 S.W.3d at 911 ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and the reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner.").

[10] *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982); *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex. Crim. App. 1986) (noting that the Supreme Court had made it clear that an interlocutory appeal of a double jeopardy claim "is not only a proper but a preferred remedy," because the right against twice being placed in jeopardy would be "significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence").

[11] *Ex Parte Watkins*, 73 S.W.3d 264, 273 (Tex. Crim App. 2002).

[12] *Weise*, 55 S.W.3d at 620; *see also Smith*, 178 S.W.3d at 804.

- A claim of illegal restraint by an order deferring adjudication of guilt.[13]

- A claim that the statute upon which the indictment is based is unconstitutional on its face.[14]

- A claim that a statute cannot be constitutionally applied to the facts alleged on the face of the indictment.[15]

At least three main factors underlie the Court's evolving jurisprudence regarding cognizability in pretrial habeas. The first factor is whether there is an adequate remedy at law, which also considers whether the right at stake would be undermined unless the issues were cognizable in pretrial habeas. *See Weise*, 55 S.W.3d at 619-20; *Ex parte Robinson*, 641 S.W.2d 552, 554-55 (Tex. Crim. App. 1982). The second factor, which is closely tied to the first, is judicial economy. *See Smith*, 178 S.W.3d at 802 ("There is no point in wasting scarce judicial and societal resources or putting the defendant to great expense, inconvenience, and anxiety if the ultimate result is never in question.").[16] The third factor is whether resolution of the question presented, if resolved in favor of the applicant, would result in the

---

[13] *Ex Parte McCullough*, 966 S.W.2d 529, 531 (Tex. Crim. App. 1998).

[14] *See Weise*, 55 S.W.3d at 620 n.17 (noting that this type of an attack involves a challenge to the trial court's power to proceed); *Elliott*, 973 S.W.2d at 738-43 (separation-of-powers challenge).

[15] *Ex parte Boetscher*, 812 S.W.2d 600, 601-04 (Tex. Crim. App. 1991).

[16] *But see Doster*, 303 S.W.3d at 725 (noting that the Court has "never actually resolved whether [judicial economy], absent a jurisdictional or constitutional defect, would be sufficient to make a claim cognizable on pretrial habeas").

immediate release of the applicant. *See Ex Parte Watkins*, 73 S.W.3d 264, 275 (Tex. Crim App. 2002).

**B.     Governor Perry's claims are cognizable in a pretrial habeas proceeding.**

Except for the facial overbreadth and vagueness challenges discussed above in Parts I and II, the district court failed to reach the merits of the arguments in Governor Perry's Application.  This appears to have been a consequence of the "as-applied" label used by Governor Perry in describing his remaining claims.  *See, e.g.*, CR471-72 ("The trial court is without authority at this pretrial stage of the case to consider and rule upon the merits of this particular defense because it is clearly (and expressly stated by Defendant to be) a challenge to the constitutionality of [the statute] as that statute is being 'applied' to *this* Defendant under *this* set of facts." (emphasis in original)).

The district court erred by giving controlling weight to labels.  As a threshold matter, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 320, 331 (2010); *see also United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477-478 (1995) (contrasting "a facial challenge" with "a narrower remedy").  More importantly, however, some

as-applied challenges *are* cognizable in a pretrial habeas proceeding. Governor Perry's challenges fall into this group for at least two reasons.

First, Governor Perry's as-applied challenges can be decided based solely on the face of the indictment and statutes under which he is charged. Although the Court of Criminal Appeals has made the broad statement that pretrial habeas "may not be used to advance an 'as applied' challenge," *Ex Parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010), the rationale for this statement only applies when the challenge "requires a recourse to evidence," which must await trial. *State ex rel. Lykos v. Fine*, 330 S.W.3d 094, 910 & n.22 (Tex. Crim App. 2011) (quoting G. DIX AND R. DAWSON, 43A TEX. PRAC. SERIES: CRIMINAL PRACTICE AND PROCEDURE § 42.254 (Supp. 2005)). When an as-applied challenge can be decided solely by reference to the indictment and the statute, it stands on the same footing, insofar as the cognizability principles described above are concerned, as a facial challenge. *See Smith*, 178 S.W.3d at 802 ("There is no point in wasting scarce judicial and societal resources or putting the defendant to great expense, inconvenience, and anxiety if the ultimate result is never in question."). Indeed, such as-applied-to-the-indictment challenges are not as-applied challenges in the true sense of the term. *See Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring, joined by Price, Womack, and Johnson, JJ.) (emphasis

34

added) ("A facial challenge is based solely upon *the face of the penal statute and the charging instrument*, while an applied challenge depends upon the evidence adduced at a trial or hearing." (emphasis added)); *see also* CR417-418.

The Court of Criminal Appeals has recognized the pretrial cognizability of as-applied-to-the-indictment challenges. In *Ex parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991), the defendant was charged with criminal nonsupport of his children, which a statute enhanced to a felony because he resided out of state. *Id.* at 601. He brought a pretrial habeas proceeding to challenge the enhancement provision of the statute on equal-protection grounds "as applied to the unusual circumstances of his case" (i.e., his out-of-state residence at the time of the offense). *Id.* at 603. The indictment specifically stated that "the defendant was then residing in another state, to-wit: Michigan," at the time of the offense. *Id.* at 602. The Court of Criminal Appeals held that this as-applied-to-the-indictment challenge was cognizable in pretrial habeas, sustained the challenge, and ordered the indictment dismissed. *Id.* at 603-04. The Court expressly declined to consider whether the statute would be constitutional as applied in other scenarios. *Id.* at 604 n.8.

Second, because Governor Perry's constitutional challenges involve a right not to be tried, they cannot be adequately resolved by direct appeal after trial. CR42,417-418. When prosecution of an official violates the doctrine of separation

35

of powers, "the policies underlying that doctrine" require that the affected official "be shielded from standing trial." *United States v. Rose*, 28 F.3d 181, 186 (D.C. Cir. 1994) (quoting *United States v. Myers*, 635 F.2d 932, 935 (2d Cir. 1980)). Similarly, the Speech or Debate Clause was designed to protect officials acting in a legislative capacity "not only from the consequences of litigation's results but also from the burden of defending themselves." *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (quotation marks omitted) (quoting *Dombrowksi v. Eastland*, 387 U.S. 82, 85 (1967)); *see also Rose*, 28 F.3d at 185.[17] Governor Perry's legislative-immunity defense likewise involves a right not to be tried. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (absolute immunity is "an entitlement not to stand trial"); *In re Perry*, 60 S.W.3d 857, 859-60 (Tex. 2001) (legislative immunity "shields legislative actors not only from liability, but also from being required to testify about their legislative activities" and "from the burden of defending themselves" (quoting *Dombrowski*, 387 U.S. at 85)). Thus, unlike in the ordinary case, the mere pendency of criminal proceedings is what imperils these constitutional principles, which are

---

[17] The *Helstoski* decision is particularly persuasive authority. The Court of Criminal Appeals has followed the U.S. Supreme Court's decision in *Abney v. United States* in holding that defendants have a right to a pretrial appeal of double-jeopardy claims. *See Robinson*, 641 S.W.2d at 555 (citing *Abney v. United States*, 431 U.S. 651 (1977)). There is thus every reason to believe that the Court of Criminal Appeals will follow the U.S. Supreme Court's *Helstoski* decision, which relied upon *Abney* to hold that government defendants have a right to a pretrial appeal of Speech or Debate Clause claims. *See Helstoski*, 442 U.S. at 506 (observing that "[t]he reasoning undergirding [*Abney*] applies with particular force here" in the context of Speech or Debate Clause challenges, which must be vindicated before trial to be effective).

designed to safeguard performance of core governmental functions. *See Myers*, 635 F.2d at 936 (describing the heightened dangers associated with trials of elected officials, including impairment of representation, irreparable political damage, and intimidation by political rivals); *see also* CR42. For this reason, just like a defendant raising a pretrial double-jeopardy challenge, *see Robinson*, 641 S.W.2d at 555, Governor Perry has no adequate remedy at law to protect his substantive rights other than a pretrial habeas proceeding. CR418.

Because the indictment implicates the powers of the Office of Governor, a post-trial appeal is an especially inadequate remedy. The public has an acute interest in the swift resolution of this case so that the current occupant of that office, Governor Greg Abbott, can discharge his official responsibilities, including use of the veto power, free from the threat of criminal liability. *See Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1989) ("In some cases, a remedy at law may technically exist; however, it may be nevertheless so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate."); *cf. In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999) (adequacy of an appellate remedy depends in part on the public's interest in efficient resolution of a dispute and does not "focu[s] exclusively on whether the parties alone have an adequate appellate remedy").

The merits of Governor Perry's remaining arguments were not reached by the district court due to its cognizability ruling. As recognized by the district court, however, the circumstances of this case are "unique" and Governor Perry's challenges are "compelling." CR472. There is no justification for further delaying a decision on the merits of those challenges. Since these claims seek to bar the trial, there can be little question that Governor Perry is challenging the power of the district court to proceed and that, if these claims are resolved in his favor, he would immediately be released from illegal restraint. The factors guiding the Court of Criminal Appeals' cognizability decisions all support the conclusion that Governor Perry's as-applied-to-the-indictment challenges are cognizable in a pretrial habeas proceeding. To the extent the charges are not dismissed on the grounds discussed in Parts I and II above, Governor Perry asks the Court to hold that all his claims are cognizable and address his remaining substantive constitutional challenges on the merits. Only the fullest possible review will protect Governor Perry's rights, preserve the powers of his former office, and further the public's interest in effective and courageous governance from all our public officials.

## IV. The indictment violates the constitutional separation of powers.

The district court erred by refusing to dismiss both counts of the indictment as violations of the Separation of Powers Clause of the Texas Constitution.

CR17-19,22-25. Article II, Section 1 of the Texas Constitution mandates a clear separation of powers among the branches of Texas government:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Hence, unlike in the federal system, the requirement of separated powers is explicitly and emphatically set forth in our constitution. "So important is this division of governmental power that it was provided for in the first section of the first article of the Constitution of the Republic of Texas, and alone it constituted article 2 of each succeeding Constitution." *Langever v. Miller*, 76 S.W.2d 1025, 1035 (Tex. 1934). The provision "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

The courts have long been vigilant in preventing any attempt by one branch of government to encroach on the authority constitutionally secured to another branch. Thus, "any attempt by one department of government to interfere with the powers of another is null and void." *Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App.

1987) (quoting *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1974)). The

Separation of Powers Clause can be violated in two ways:

> (1)    when one branch of government assumes or is delegated a power more properly attached to another branch, or
>
> (2)    when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.

*Lo*, 424 S.W.3d at 28. A statute that conflicts with any provision of the Texas

Constitution is, of course, void. *See Cook v. State*, 902 S.W.2d 471, 479 (Tex. Crim.

App. 1995). Claims asserting violations of the Separation of Powers Clause have

been considered in pretrial habeas cases, including by this Court. *See, e.g.*, *Ex parte*

*Gill*, 413 S.W.3d 425, 431-32 (Tex. Crim. App. 2013) (considering but rejecting on

the merits an asserted violation of the Separation of Powers Clause); *Ex parte Elliott*,

973 S.W.2d 737, 738-43 (Tex. App—Austin 1998, pet. ref'd) (same).

In this case, the actions of the judicial branch—represented here by the district

judge and the attorney pro tem he appointed—are unduly interfering with the

constitutionally-assigned powers of the executive branch by scrutinizing a

gubernatorial veto and the alleged threat preceding that veto. The power to veto,

including the line-item veto of appropriations, is one of the core duties assigned to a

Texas Governor by our Constitution. Article IV, Section 14 provides in part:

> If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve

40

the other portion of the bill.  In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect.

This language imposes no limits on the Governor's authority to exercise the veto in his or her unbounded discretion.  As one authority noted: "The veto, particularly the item veto, is perhaps the most significant of the Texas governor's constitutional powers . . . . [B]ecause he has no significant budgetary powers . . . the item veto is the primary method by which he exercises some control over the amounts and purposes of state expenditures."  1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 339 (George D. Braden ed. 1977).[18]

In exercising the veto power, a Governor acts in a *legislative,* not an executive, capacity, and thus is a member of a governing body.  *See Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 598 (Tex. 1976) (governor's "veto power is a legislative function and not an executive function"); *Fulmore v. Lane,* 140 S.W. 405, 411 (Tex. 1911); *Pickle v. McCall*, 24 S.W. 265, 268 (Tex. 1893).  Nor is this an anomalous or outmoded view; the veto power is also characterized as a legislative act in the federal

---

[18] Indeed, virtually any exercise of the veto power could be criminalized—or at least harassed with prosecution—under the State's interpretation of the law.  For example, every exercise of the veto, and particularly the line-item veto, will entail winners and losers.  On the State's theory, such vetoes could nearly always be construed as a "misuse of government property" done with "intent to harm another" under Texas Penal Code Section 39.02.  At the very least, an investigation could be opened into virtually every veto.

system, *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998), as well as in many other states.[19]

Because the power to veto is so central to the gubernatorial office, and because nothing in the Texas Constitution or laws permits the judicial branch to scrutinize a governor's political decision to veto an appropriation, this is the type of "political question" that American courts have traditionally declined to review as nonjusticiable. *See generally Nixon v. United States*, 506 U.S. 224 (1993); *Goldwater v. Carter*, 444 U.S. 996 (1979); *Coleman v. Miller*, 307 U.S. 433 (1939); *Luther v. Borden*, 48 U.S. 1 (1849). The U.S. Supreme Court has generally recognized the doctrine in cases with

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent

---

[19] *See, e.g.*, *Homan v. Branstad*, 812 N.W.2d 623, 629 (Iowa 2012); *Barnes v. Secretary of Admin.*, 586 N.E.2d 958, 961 (Mass. 1992) ("it is for the Legislature . . . to determine finally which social objectives or programs are worthy of pursuit, the Governor may properly use his veto power to accomplish legislative-type goals") (citation omitted); *State ex rel. Cason v. Bond*, 495 S.W.2d 385, 392 (Mo. 1973) ("[W]hen the Governor takes part in appropriation procedures [by vetoing legislation], he is participating in the legislative process . . . ."); *State ex rel. Dickson v. Saiz*, 308 P.2d 205, 211 (N.M. 1957) ("when the Governor exercises his right of partial veto he is exercising a quasi-legislative function"); *Spokane Grain & Fuel Co. v. Lyttaker*, 109 P. 316, 320 (Wash. 1910) ("In approving and disapproving laws, in the exercise of his constitutional prerogative, the executive is a component part of the Legislature."); *State ex rel. Wis. Senate v. Thompson*, 424 N.W.2d 385, 391 (Wisc. 1988) ("The partial veto power in this state was adopted . . . to make it easier for the governor to exercise what this court has recognized to be his 'quasi-legislative' role, and to be a pivotal part of the 'omnibus' budget bill process.").

> resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). State courts, including those of Texas, have had little need to articulate the concept as thoroughly as the U.S. Supreme Court, but they have likewise consistently declined to decide cases that raise political questions. The Court of Criminal Appeals has held in the context of parole decisions that the Governor's exercise of his discretionary constitutional authority raises political, not judicial, questions. In *Ex parte Ferdin*, 183 S.W.2d 466 (Tex. Crim. App. 1944), the Court refused to entertain jurisdiction over "what is in effect an appeal from the act of the Governor in revoking the parole," because courts lack "power over the acts of the Governor so long as he is within the law and the matter involved is one of his judgment and discretion in the performance of his duty assigned to him by the Constitution . . . . Whether or not his acts are harsh, ill advised, and arbitrary, is not a matter for this court to decide . . . ." *Id.* at 467-68. *See also Ex parte Pitt*, 206 S.W.2d 596, 597 (Tex. Crim. App. 1947) ("The sole arbiter of the wisdom of the revocation [of the Governor's conditional pardon] is the Governor."); *Ex parte Meza*, 185 S.W.2d 444, 445 (Tex. Crim. App. 1945) (same).

43

The Texas Constitution reposes the check on a Governor's veto power not in the judicial branch, but in the Legislature and the people. Should either deem veto decisions to be erroneous or improper, the Texas Constitution provides them a legislative or political countermeasure. The Legislature may, if it remains in session, override a gubernatorial veto. Tex. Const. art. IV, § 14. Legislators may refuse to cooperate with the Governor on subsequent initiatives, including appointments. If the Legislature concludes that the governor's actions are sufficiently reprehensible, the House may impeach and the Senate may try and, upon conviction, remove the governor from office. *Id.* art. XV, §§ 1-5. And voters may have an opportunity to defeat the re-election efforts of a governor whose policy choices they disagree with, or they can elect legislators who will join in sufficient strength to re-enact vetoed legislation and override any further veto attempts. These alternatives have sufficient weight to cause most governors to exercise their veto power sparingly and deliberately. Allowing a criminal prosecution of a political decision where there is no allegation of bribery or demonstrable corruption undermines the basic structure of state government.[20]

---

[20] As discussed below in connection with the Speech or Debate Clause, the Legislature can criminalize acts of political corruption, including the acceptance of a bribe or a promise of a bribe in exchange for the exercise of a veto. Such a prosecution does not trigger any of the separation-of-powers issues that plague this prosecution because the illegal act is the acceptance of the bribe or the promise of the bribe, not the veto itself.

Thus, the statutes upon which this prosecution is based are void, at least to the extent that they permit the judicial branch to interfere with Article IV, Section 14 of the Texas Constitution, in violation of Article II, Section 1. In light of the foregoing, the Court should hold that Claims 3 and 4 (as to Count 1) and Claims 9 and 10 (as to Count II) of Governor Perry's Application are cognizable, sustain these claims on the merits, and dismiss the indictment.

## V. The indictment violates the Texas Speech or Debate Clause and the common-law doctrine of legislative immunity.

The district court also erred by refusing to dismiss both counts of the indictment as violations of the Texas Constitution's Speech or Debate Clause and the absolute legislative immunity that accompanies it when the Governor is considering or exercising his veto power. CR18-19,26-30.

Article III, Section 21 of the Texas Constitution provides that "[n]o member shall be questioned in any other place for words spoken in debate in either House." This is Texas's Speech or Debate Clause, which is similar to the Speech or Debate Clause in the United States Constitution.[21] On the few occasions when Texas courts have considered the Texas Speech or Debate Clause, they have indicated that it has the same scope as the federal clause. *See Canfield v. Gresham*, 17 S.W. 390, 392-93

---

[21] Article I, Section 6, Clause 1 of the U.S. Constitution states in relevant part that "for any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place."

(Tex. 1891) (*citing Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)); *Bowles v. Clipp*, 920 S.W.2d 752, 758 (Tex. App.—Dallas 1996, writ denied); *see also Tenney v. Brandhove*, 341 U.S. 367, 375 (1951) (noting common purpose of federal and state Speech or Debate Clauses, including Texas's).

Under federal precedents, the Clause is "read broadly to effectuate its purposes," *Doe v. McMillan*, 412 U.S. 306, 311 (1973), which are "[t]o prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *id.* at 316, and to "free[] the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Gravel v. United States*, 408 U.S. 606, 618 (1972). Stated differently, the purpose of the principle is to secure to every member "exemption from *prosecution*, for every thing said or done by him, as a representative, in the exercise of the functions of that office." *Id.* at 660 (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808) (emphasis added)).

The Clause originated as a response to the British Crown's use of criminal prosecution to harass political opponents in Parliament. *See United States v. Johnson*, 383 U.S. 169, 182 (1966). As noted in *Johnson*, "[t]here is little doubt that the instigation of *criminal charges* against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England and, in the context of the American system of

46

separation of powers, is the predominant thrust of the Speech or Debate Clause." *Id.* The Clause therefore naturally implicates separation-of-powers considerations, as it aims to "preserve the constitutional structure of separate, coequal, and independent branches of government." *United States v. Helstoski*, 442 U.S. 477, 491 (1979).

Borrowing from federal analyses, Texas courts have derived from the Clause a broad doctrine of legislative immunity. *See Perry*, 60 S.W.3d at 859. Not only are oral speech and debate protected, but so are written reports and legislative votes. *See Canfield*, 17 S.W. at 392-93 (*citing Kilbourn*, 103 U.S. at 204); *McMillan*, 412 U.S. at 311. In fact, the Clause protects all communications that are "an integral part of the deliberative and communicative processes" involved in a legislative act, including communications with or among aides. *Gravel*, 408 U.S. at 625; *see also Perry*, 60 S.W.3d at 860-61.

As mentioned before, legislative activity includes a Governor's exercise of the veto power. *See Jessen*, 531 S.W.2d at 598. But the Clause also protects other government officials besides the governor when they engage in "legitimate legislative activity." *Tenney*, 341 U.S. at 376; *see also Perry*, 60 S.W.3d at 860 (holding that the attorney general, comptroller, and land commissioner enjoy legislative immunity for "legitimate legislative functions" performed while serving

47

on the Legislative Redistricting Board). [22]   Legislative activity also includes executive actions involving budgetary and appropriations matters.  *See Bogan*, 523 U.S. at 55-56 (affording legislative immunity to city mayor for "introduction of a budget and signing into law an ordinance," a "discretionary, policymaking decision implicating the budgetary priorities of the city" and "formally legislative, even though he was an executive official"); *Shade v. U.S. Congress*, 942 F. Supp. 2d 43, 48 (D.D.C. 2013) (appropriation of funds is "a core legislative function"). [23]

Any criminal prosecution based on this protected legislative activity is barred. "It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."  *United States v. Brewster*, 408 U.S. 501, 525 (1972).  Thus, legislative acts may not themselves be criminalized.  *See Helstoski*, 442 U.S. at 488.

---

[22] *See also Camacho v. Samaniego*, 954 S.W.2d 811, 823 (Tex. App.—El Paso 1997, pet. denied) (citing *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir. 1981), for proposition that absolute legislative immunity extended to a mayor's veto of an ordinance passed by a city council).

[23] To be sure, the protections of the Clause and its accompanying immunity have their limits.  They do not extend to actions that are "no part of the legislative process or function," even if performed by legislators.  *United States v. Brewster*, 408 U.S. 501, 526 (1972).  For example, a legislator may be prosecuted for bribery because "acceptance of the bribe is the violation of the statute, not performance of the illegal promise," making it "unnecessary to inquire into how [the legislator] spoke, how he debated, how he voted, or anything he did in the chamber or in committee."  *Id.* at 526.  *See also Mutscher v. State*, 514 S.W.2d 905, 914-15 (Tex. Crim. App. 1974) (affirming a state legislator's conviction for bribery and upholding the bribery statute because "[t]aking a bribe is, obviously, no part of the legislative process or function; it is not, a legislative act" (quoting *Brewster*, 408 U.S. 527)).

Nor may a prosecution proceed if it necessarily depends upon evidence of legislative acts or the motives for them. *See Johnson*, 383 U.S. at 184-85. In fact, evidence of a legislative act may not even be introduced at trial in an otherwise permissible prosecution. *Helstoski*, 442 U.S. at 487-88. This is because the courts have recognized that the "level of intimidation against a local legislator arising from the threat of a criminal proceeding is at least as great as the threat from a civil suit," so that legislative immunity "should be extended to criminal proceedings." *State v. Holton*, 997 A.2d 828, 856 (Md. Ct. Spec. App. 2010), *aff'd*, 24 A.3d 678 (Md. 2011) (quotations and citation omitted). *See also McMillan*, 412 U.S. 306, 312-13 (1973) ("Congressmen . . . are immune from liability for their actions within the 'legislative sphere' even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." (citation omitted)). Indeed, officials cannot even be required to testify about their legislative activities, regardless of the context in which their testimony is sought. *Perry*, 60 S.W.3d at 858, 861.[24]

---

[24] Other states provide similar protection in civil, criminal, and quasi-criminal matters. *See, e.g.*, *State v. Dankworth*, 672 P.2d 148, 151 (Alaska Ct. App. 1983) (even in a criminal case, "[o]nce it is determined that [a] legislative function . . . was apparently being performed, the propriety and the motivation for the action taken, as well as the detail of the acts performed, are immune from judicial inquiry") (quoting *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973)); *D'Amato v. Superior Court*, 167 Cal. App. 4th 861 (2008) ("The district attorney acknowledges the principles of legislative immunity . . . but contends immunity applies only to civil suits, and does not extend to criminal prosecutions. We disagree."); *State v. Neufeld*, 926

This protection is not eviscerated even by allegations of a bad motive. A charge that legislative conduct was "improperly motivated" is "precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry." *Johnson*, 383 U.S. at 180. Otherwise, immunity would be held hostage to "a conclusion of the pleader" or "a jury's speculation as to motives." *Bogan*, 523 U.S. at 54 (observing that the Court had applied immunity even when a legislator "singled out the plaintiff for investigation in order to intimidate and silence the plaintiff and deter and prevent him from effectively exercising his constitutional rights" (citing *Tenney*, 341 U.S. at 377)). "[I]t is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Perry*, 60 S.W.3d at 860 (quoting *Bogan*, 523 U.S. at 55). Simply put: "The claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377. The remedy for those who disagree with a veto, no matter how earnestly, is political, not judicial.[25]

P.2d 1325, 1337 (Kan. 1996) ("Congressmen . . . are immune from liability for their actions within the legislative sphere . . . even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." (internal quotation marks omitted)); *Holton*, 997 A.2d at 851 ("we hold that, as a matter of common law, local legislators may invoke that same privilege in a criminal prosecution"); *Irons v. R.I. Ethics Comm'n*, 973 A.2d 1124, 1131 (R.I. 2009) ("as long as [a legislator's] challenged actions, stripped of all considerations of intent and motive, were legislative in character, the doctrine of absolute legislative immunity protects them from such claims"—there, an ethics agency enforcement action).

[25] In *Bogan*, the Supreme Court held that the acts of introducing, voting for, and signing an ordinance eliminating the government office held by a health department administrator, when "stripped of all considerations of intent and motive," were in fact "legislative" because the

50

For these reasons, attempts to convert inescapably political disputes into criminal complaints must be foreclosed at the outset. A number of federal cases have required dismissal of grand-jury indictments premised on privileged Speech or Debate materials, thus barring a trial that would require the government to introduce evidence of privileged Speech or Debate materials. For example, in *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992), a former congressman was prosecuted for committing perjury before a grand jury. *Id.* at 1534. The central allegation was that he lied to the grand jury about his knowledge of various money-laundering statutes. *Id.* at 1535-37. To prove his knowledge, the prosecution introduced evidence before the grand jury and at trial about the congressman's activities in Congress, including his activity on a banking committee. *Id.* at 1539-40. The court of appeals reversed the congressman's conviction and held that the prosecution violated the Speech or Debate Clause for two reasons: (1) "the AUSA[] question[ed] [the congressman] before the grand jury about his committee memberships" in an effort to show his knowledge of money-laundering statutes, and (2) "reference [was] made to [the congressman's] committee memberships both in the grand jury proceedings and at trial." *Id.* at 1543. The court held that "the remedy for the violations of the privilege

"ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city." 523 U.S. at 55. Governor Perry's decision to veto an item of appropriation and any announcement by his staff of his intent most certainly reflects a similar "discretionary, policymaking decision implicating the budgetary priorities" of Texas.

is dismissal of the affected counts." *Id.* at 1543. *See also Johnson*, 383 U.S. at 185 (holding that Speech or Debate material was improperly presented to the grand jury and ordering a new trial "purged of elements offensive to the Speech or Debate Clause"); *Brewster*, 408 U.S. at 526-27 (holding that, only because a conviction in that case could be sustained without "inquir[y] into the [legislative] act or its motivation," could an indictment of a congressman which referred to legislative acts stand, as "[t]o make a prima facie case under this indictment, the Government need not show any act of [Brewster] subsequent to the corrupt promise for payment," i.e., a bribe).[26]

These principles mandate dismissal of both counts of the indictment against Governor Perry. Count I is predicated upon a legislative act of Governor Perry—the veto—and Count II involves the Governor's alleged discussions regarding the anticipated legislative act and its announcement (i.e., the threat of a veto). The indictment therefore necessarily seeks to impose criminal liability for, and compel evidence related to, acts that are privileged by the Speech or Debate Clause and legislative immunity.

---

[26] Dismissing an indictment that violates the federal Speech or Debate Clause is also supported by *United States v. Kolter*, 71 F.3d 425 (D.C. Cir. 1995); *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995); *United States v. Zielezinski*, 740 F.2d 727 (9th Cir. 1984); *United States v. Beery*, 678 F.2d 856 (10th Cir. 1982); and *United States v. Renzi*, 686 F. Supp. 2d 956 (D. Ariz. 2010).

In light of the foregoing, the Court should uphold the cognizability of Claims 5, 6, and 7 (as to Count 1) and Claim 11 (as to Count II) of Governor Perry's pretrial habeas application, sustain those claims on the merits, and dismiss both counts of the indictment.

## VI. The abuse-of-official-capacity statute is unconstitutionally vague as applied to the veto alleged on the face of the indictment.

The district court further erred by refusing to dismiss Count I of the indictment based on Claim 10 of Governor Perry's habeas petition. CR46-48. Count I is based on the offense of Abuse of Official Capacity. *See* Tex. Penal Code § 39.02(a)(2).[27] In contrast to the coercion statute at Sections 36.03(a)(1) and 1.07(a)(9)(F), the statute defining Abuse of Official Capacity may not be void on its face. It appears to be tightly-worded with graduated penalties for escalating levels of wrongdoing. But it has no discernible relationship to any conduct alleged in the indictment against Governor Perry. Hence, this statute either does not apply to Governor Perry's alleged conduct at all or is unconstitutionally vague as applied to

---

[27] In pertinent part, Abuse of Official Capacity is defined as follows: "A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment." Tex. Penal Code § 39.02(a)(2).

the facts alleged on the face of the indictment. In either case, Count I should be dismissed.

Prosecution of Governor Perry under Section 39.02(a)(2) violates all three related manifestations of the fair-warning requirement. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). First, the vagueness doctrine would be violated because there was no fair warning that Governor Perry's act of vetoing funding for the PIU would violate that section. Second, the rule of lenity would be violated by an interpretation of the statute bringing Governor Perry's veto within the umbrella of coverage. Third, the prosecution involves an entirely novel construction of these criminal statutes which neither the text of the statutes nor any prior judicial decision has fairly disclosed to be within their scope.

This vagueness is evident in several respects. First, neither Governor Perry nor any other governor could have had fair notice that he was "misus[ing] government property" by vetoing a line-item appropriation, the effect of which was to keep funds *in* the State Treasury rather than allowing funds to be transferred to Lehmberg's office after September 1, 2013. Second, Governor Perry did not have fair notice that he could somehow have "custody or possession" of all the State funds proposed to be expended in an appropriations bill merely "by virtue of [his] office or employment" as governor. As this Court can judicially notice, the funds to be

disbursed under the two-year budget commencing September 1, 2013, would not have been collected by that date, let alone by June 14, 2013, the date of the misconduct alleged in Count I of the indictment, because Texas uses a pay-as-you-go system of raising revenue for appropriations.[28] In essence, the special prosecutor's interpretation of Section 39.02(a)(2) would turn the Rule of Lenity—the principle that unclear criminal statutes should be construed in favor of the defendant, *Cuellar v. State*, 70 S.W.3d 815, 819 n.6 (Tex. Crim. App. 2002)— on its head.

For these reasons, Count I must be dismissed as a violation of due process.

## VII. The coercion statute is unconstitutional as applied to the veto threat alleged on the face of the indictment.

The district court also erred by failing to dismiss Count II of the indictment based on Claims 5 and 7 of Governor Perry's Application. Count II relies on a statute that is unconstitutional as applied to the facts alleged on the face of the

---

[28] The Texas Constitution requires the Texas Comptroller to provide the Legislature a biennial revenue estimate ("BRE") at the beginning of each regular legislative session. *See* Tex. Const. art. III, § 49a. Because the Legislature is constitutionally prohibited from appropriating more revenue than will be collected, the BRE is used by the Legislature to ensure that appropriations will not exceed the anticipated revenue. Upon final passage of an appropriations bill, it is sent to the Texas Comptroller to certify whether the anticipated revenue will be sufficient to cover the appropriations made by the Legislature. *See* Senate Research Center, *Budget 101: A Guide to the Budget Process in Texas* at 3, 10 (Jan. 2013), *available at* www.senate.state.tx.us/SRC/pdf/Budget101WebsiteSecured_2013.pdf.

indictment, both on vagueness and First Amendment grounds. CR41-46. Indeed, this very issue has already been settled by a prior judicial decision.

### A. As applied, the coercion statute is unconstitutionally vague.

Twenty-five years ago, in *State v. Hanson*, 793 S.W.2d 270 (Tex. App.—Waco 1990, no writ), the court of appeals found a previous but essentially identical version of Section 36.03(a)(1) unconstitutional as applied to circumstances very similar to those at issue in the indictment. Hanson, a constitutional county judge, was indicted for words she allegedly spoke to other public officials. *Id.* at 271. Specifically, the county judge was accused of intentionally and knowingly threatening to "terminate the county's funding of the salaries of a deputy district clerk and an assistant district attorney in an attempt to coerce the district judge into firing the county auditor and the county attorney into revoking a misdemeanant's probation." *Id.* The court of appeals affirmed the trial court's dismissal of two indictments which alleged that Judge Hanson had coerced a public servant, and held that Section 36.03(a)(1) was unconstitutionally vague as applied to Judge Hanson's alleged conduct.

The court began its analysis by noting that a criminal statute that seeks to punish threats must "clearly distinguish between an actionable or true threat and protected speech." *Id.* at 272. The definition of "coercion" at the time of Judge

56

Hanson's conduct, then set forth in Section 36.01(a)(1), is identical to the current definition in Section 1.07(a)(9), discussed above. Because that definition, then as now, failed to distinguish between threats of lawful and unlawful official action, Judge Hanson "had to guess at the meaning of section 36.03(a)(1) and its application to her official conduct." *Id.* The court concluded that, in light of the "impermissibly vague definition of 'coercion,'" "these penal provisions violated due process because they did not give [the county judge] fair notice of what type of threat was prohibited, failed to provide a clear, objective standard by which those charged with enforcement could assess her alleged conduct for its legality, and had a potential of inhibiting the exercise of her protected free expression as a public official." *Id.* at 273.

For the exact same reason, Section 36.03(a)(1) is unconstitutionally vague as applied to the conduct alleged on the face of the indictment. Governor Perry stands accused of threatening to issue a veto—a lawful action within his sole discretion under the Texas Constitution. *See* Tex. Const. art. IV, § 14. Just like Judge Hanson, he is accused of threatening to partially cut off funding for a district attorney's office—an action within his lawful power—to influence the decisions of another government employee not under his direct control. Governor Perry further

57

incorporates by reference his facial vagueness arguments in Part II above, which also support this as-applied challenge.

**B.      As applied, the coercion statute violates the First Amendment.**

Beyond finding the statute unconstitutionally vague, the court noted that Judge Hanson's alleged "threat" was protected by the First Amendment because "[c]oercion of a lawful act by a threat of lawful action is protected free expression." *Hanson*, 793 S.W.2d at 272.  Indeed, such speech, like Governor Perry's alleged threat, is core political speech for which First Amendment protection "is at its zenith." *Meyer*, 486 U.S. at 425.  Although the *Hanson* court declined to explicitly address the question of whether the statute was overbroad, the court's discussion clearly indicates that, as applied to the judge's alleged conduct, the statute prohibited protected speech in contravention of the First Amendment.  The same thing is true in Governor Perry's case, and Count II must be dismissed for this reason as well.

The only difference between the statutory language at the time of *Hanson* and now is that Section 36.03(c) currently contains an exception for "members of the governing body of a governmental entity."  However, this exception does nothing to solve the vagueness and free-speech problems identified by *Hanson*.  If anything, the exception strengthens the impression that threats of lawful action are not prohibited by the statute.  Governor Perry further incorporates by reference his facial

58

overbreadth arguments in Part I above, which also support this as-applied challenge.[29]

In short, if Section 36.03(a)(1) makes threats of lawful action illegal, then it lacks the clarity necessary to withstand a vagueness challenge as applied to Governor Perry's alleged conduct, and it certainly violates his First Amendment right to free speech. Count II of the indictment must therefore be dismissed.

## CONCLUSION

This case raises legal issues of historic significance and will affect Texas officeholders for many years to come. Governor Perry urges the Court to preserve the integrity of our core constitutional principles, rather than stand aside as they

---

[29] In 1989, the Legislature amended the definition of coercion so that only threats to "*[u]nlawfully* take or withhold official action as a public servant" were included, thereby excluding threats to take lawful action. *Hanson*, 793 S.W.2d at 273. This amendment, while inapplicable in *Hanson*, would have certainly reduced, if not resolved, the vagueness and free-speech problems identified in *Hanson*. *See* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" to mean "criminal or tortious or both"). However, the word "unlawfully" was deleted in 1994 when the definition of "coercion" was moved from Chapter 36 to Chapter 1 of the Penal Code. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, Tex. Gen. Laws 3586-3766. This deletion was one miniscule part of a "sweeping revision of the Texas Penal Code" that substantially changed the way offenders were sentenced and created a new category of offense, the state jail felony. Texas Legislative Council, *Facts at a Glance: Comparison of Punishment and Sentencing Provisions in the 1993 and 2003 Penal Code* (2005), *available at* http://www.tlc.state.tx.us/pubspol/penalcode.pdf. The 1994 act itself runs to over 200 pages in the Texas Session Laws. The legislative record contains no debate or explanation for this small change in the "coercion" definition, much less any attempt to reconcile it with the holding in *Hanson*. As far as the record discloses, the change received no meaningful legislative attention. Whatever the reason for the change, the result was to revert the statute back to its constitutionally defective state at the time of *Hanson*.

59

begin to erode under the threat of overreaching indictments. The health of our republic and the liberty of our citizens depend upon it.

For all the reasons given above, Governor Perry respectfully prays that this Court reverse the district court's denial of relief, sustain the constitutional issues raised in his Application, and bar trial on both counts of the indictment and/or dismiss both counts of the indictment. Governor Perry further prays for any other relief to which he may be entitled.

Respectfully submitted,

| | |
|---|---|
| THE BUZBEE LAW FIRM | BAKER BOTTS L.L.P. |

| | |
|---|---|
| */s/ Anthony G. Buzbee* | */s/ Thomas R. Phillips* |
| Anthony G. Buzbee | Thomas R. Phillips |
| State Bar No. 24001820 | State Bar No. 00000102 |
| JPMorgan Chase Tower | San Jacinto Center |
| 600 Travis Street, Suite 7300 | 98 San Jacinto Blvd., Suite 1500 |
| Houston, Texas 77002 | Austin, Texas 78701-4078 |
| Telephone:  713.223.5393 | Telephone:  512.322.2500 |
| Facsimile:  713.223.5909 | Facsimile:  512.322.2501 |

BOTSFORD & ROARK

*/s/ David L. Botsford*
David L. Botsford
State Bar No. 02687950
1307 West Avenue
Austin, Texas 78701
Telephone:  512.479.8030
Facsimile:  512.479.8040

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document contains 14,757 words in the portions of the document that are subject to the word limits of Texas Rule of Appellate Procedure 9.4(i), as measured by the undersigned's word-processing software.


*/s/ David L. Botsford*
David L. Botsford


**CERTIFICATE OF SERVICE**

This is to certify that a true and complete copy of this document has been emailed to Mr. Michael McCrum at michael@McCrumlaw.com and to Mr. David Gonzalez at david@sg-llp.com on the same date that it was electronically filed with the Clerk of the Court.


*/s/ David L. Botsford*
David L. Botsford

**INDEX TO APPENDIX**

                                                                                                    **TAB**

Indictment .................................................................................................................A

Order Denying Defendant's First Application for
Pretrial Writ of Habeas Corpus..................................................................................B

Texas Penal Code excerpts .........................................................................................C

Texas Constitution excerpts........................................................................................D

United States Constitution excerpts ...........................................................................E

# APPENDIX A

No. D1DC14 100139

Filed in The District Court
of Travis County, Texas

AUG 1 5 2014

5:30 AM.

Rodriguez-Mendoza, Clerk

The State of Texas v. James Richard "Rick" Perry

# INDICTMENT

## Count I - Abuse of Official Capacity 39.02 DPS 23990064
## Count II - Coercion of Public Servant 36.03 DPS 13990027

In the 390th Judicial District Court of Travis County, Texas

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:**

**THE GRAND JURY** for the County of Travis, State of Texas, duly selected, empanelled, sworn, charged, and organized as such at the January 2014 Term, A.D., of the 390th Judicial District Court for said County, upon its oath presents in and to said Court at said term, that in Travis County, Texas, and anterior to the presentment of this indictment, James Richard "Rick" Perry, committed the following offenses:

## Count I

On or about June 14, 2013, in the County of Travis, Texas, James Richard "Rick" Perry, with intent to harm another, to-wit, Rosemary Lehmberg and the Public Integrity Unit of the Travis County District Attorney's Office, intentionally or knowingly misused government property by dealing with such property contrary to an agreement under which defendant held such property or contrary to the oath of office he took as a public servant, such government property being monies having a value of in excess of $200,000 which were approved and authorized by the Legislature of the State of Texas to fund the continued operation of the Public Integrity Unit of the Travis County District Attorney's

Office, and which had come into defendant's custody or possession by virtue of the defendant's office as a public servant, namely, Governor of the State of Texas.

## Count II

Beginning on or about June 10, 2013, and continuing through June 14, 2013, in the County of Travis, Texas, by means of coercion, to-wit: threatening to veto legislation that had been approved and authorized by the Legislature of the State of Texas to provide funding for the continued operation of the Public Integrity Unit of the Travis County District Attorney's Office unless Travis County District Attorney Rosemary Lehmberg resigned from her official position as elected District Attorney, James Richard "Rick" Perry, intentionally or knowingly influenced or attempted to influence Rosemary Lehmberg, a public servant, namely, the elected District Attorney for Travis County, Texas, in the specific performance of her official duty, to-wit: the duty to continue to carry out her responsibilities as the elected District Attorney for the County of Travis, Texas through the completion of her elected term of office, and the defendant and Rosemary Lehmberg were not members of the same governing body of a governmental entity, such offense having been committed by defendant, a public servant, while acting in an official capacity as a public servant.


AGAINST THE PEACE AND DIGNITY OF THE STATE OF TEXAS.


*Della M. Tyus*
Foreperson of the Grand Jury

# APPENDIX B

## NO. D1DC14-100139

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | 390TH JUDICIAL DISTRICT |
| JAMES RICHARD "RICK" PERRY | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S FIRST APPLICATION FOR PRETRIAL WRIT OF HABEAS CORPUS

On August 15, 2014, the Grand Jury for the County of Travis, State of Texas returned an indictment against Defendant James Richard "Rick" Perry. The indictment charges two counts. Count I alleges a violation of TEX. PENAL CODE Section 39.02 Abuse of Official Capacity, and Count II alleges a violation of TEX. PENAL CODE Section 36.03 Coercion of Public Servant.[1]

On August 25, 2014, Defendant, through his counsel of record, filed an Application For Pretrial Writ of Habeas Corpus seeking to bar the prosecution of him on "multiple constitutional grounds."

As more fully discussed herein, well-settled Texas case law does not permit a pretrial "as

---

[1] Count I of the indictment states as follows: On or about June 14, 2013, in the County of Travis, Texas, James Richard "Rick" Perry, with intent to harm another, to-wit, Rosemary Lehmberg and the Public Integrity Unit of the Travis County District Attorney's Office, intentionally or knowingly misused government property by dealing with such property contrary to an agreement under which defendant held such property or contrary to the oath of office he took as a public servant, such government property being monies having a value of in excess of $200,000 which were approved and authorized by the Legislature of the State of Texas to fund the continued operation of the Public Integrity Unit of the Travis County District Attorney's Office, and which had come into defendant's custody or possession by virtue of the defendant's office as a public servant, namely, Governor of the State.

Count II of the indictment states as follows: Beginning on or about June 10, 2013, and continuing through June 14, 2013, in the County of Travis, Texas, by means of coercion, to-wit: threatening to veto legislation that had been approved and authorized by the Legislature of the State of Texas to provide funding for the continued operation of the Public Integrity Unit of the Travis County District Attorney's Office unless Travis County District Attorney Rosemary Lehmberg resigned from her official position as elected District Attorney, James Richard "Rick" Perry, intentionally or knowingly influenced or attempted to influence Rosemary Lehmberg, a public servant, namely, the elected District Attorney for Travis County, Texas, in the specific performance of her official duty, to-wit: the duty to continue to carry out her responsibilities as the elected District Attorney for the County of Travis, Texas through the completion of her elected term of office, and the defendant and Rosemary Lehmberg were not members of the same governing body of a governmental entity, such offense having been committed by defendant, a public servant, while acting in an official capacity as a public servant.

**Filed In The District Court of Travis County, Texas**
on _____ 1-27-2015 _____ HS
at _____ 1:30 p _____ M.
**Velva L. Price, District Clerk**

applied" constitutional analysis of a state penal or procedural statute. Therefore, the trial court does not have the authority to decide at this stage of the case whether TEX. PENAL CODE Sections 39.02(a)(2) and 36.03(a)(1) are being unconstitutionally applied to this Defendant. However, the trial court does have the authority to determine whether a statute is unconstitutional on its face. This court finds that TEX. PENAL CODE Sections 39.02(a)(2) and 36.03(a)(1) are not facially unconstitutional. Therefore, this court DENIES Defendant's First Application For Pretrial Writ of Habeas Corpus.[2]

## DEFENDANT'S CLAIMS FOR RELIEF

### Count I

1.   As to Count I, Section 39.02(a)(2) violates the Fifth and Fourteenth Amendments to the Constitution of the United States as applied because its prohibition of "misuse" of "government property ... that has come into the [Governor's] custody or possession" is unconstitutionally vague as a matter of law if extended to a mere gubernatorial veto of any appropriation of State funds.

2.   As to Count I, Section 39.02(a)(2) violates Article I, Sections 10 and 19 of the Texas Constitution as applied because its prohibition of "misuse" of "government property ... that has come into the [Governor's] custody or possession" is unconstitutionally vague as

---

2 Although not relevant to the issues raised in Defendant's pretrial writ application, the court noted in its order ruling on Defendant's motion to quash, and thus wishes to note here, that Count II appears to allege a Class A misdemeanor, not a third degree felony. TEX. PENAL CODE sec. 36.03(b) states that "an offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree." The court's reading of Count II as a Class A misdemeanor, and not as a third degree felony, is based upon two things. First, the alleged "threat" is not charged in the indictment as "a threat to commit a felony." The term "felony" is nowhere found in Count II, and if the State believes that it has alleged "coercion" as a threat to commit the felony of abuse of official capacity as charged in Count I, the indictment is not so worded. A defendant is entitled to "notice of the particular offense with which he is charged." TEX. CODE CRIM. PROC. art. 21.11. Second, the last line of Count II includes the phrase, "such offense having been committed by defendant, a public servant, while acting in an official capacity as a public servant." Defendant "acting in an official capacity as a public servant" is not an element of a Section 36.03(a)(1) offense, but it is required to bring the alleged "threat" within the Section 1.07(a)(9)(F) definition of "coercion." Thus, the omission of the wording "threat to commit a felony," coupled with the inclusion of the charge that Defendant was acting in *his* official capacity, leads to the logical conclusion that Count II is being indicted as a threat "to take or withhold action as a public servant" (TEX. PENAL CODE Section 1.07(a)(9)(F)), which is a Class A misdemeanor. Such language also brings the charged offense within the jurisdiction of this court under TEX. CODE CRIM. PROC. art. 4.05 ("... [C]riminal district courts shall have original jurisdiction in criminal cases ... of all misdemeanors involving official misconduct.") In any event, the grade of the offense charged in Count II has never been raised as an issue by Defendant, and thus any confusion regarding the grade of the offense alleged in Count II is not an issue before the court.

2

a matter of law if extended to a mere gubernatorial veto of any appropriation of State funds.

3.  As to Count I, Section 39.02(a)(2) is unconstitutional as applied because it infringes upon the Governor's absolute constitutional right and duty to approve or disapprove "items of appropriation" under Article IV, Section 14 of the Texas Constitution.

4.  As to Count I, Section 39.02(a)(2) is unconstitutional as applied because it violates the separation of powers between the various departments of government that is guaranteed to the People by Article II, Section 1 of the Texas Constitution.

5.  As to Count I, because a governor acts in a constitutionally prescribed legislative capacity in vetoing legislation, Section 39.02(a)(2) is unconstitutional as applied because it violates the protection afforded by the Speech or Debate Clause of Article III, Section 21 of the Texas Constitution.

6.  As to Count I, because the Governor was acting in a legislative capacity in vetoing the appropriation at issue, Count I of the indictment is void because it is necessarily based on evidence privileged by the Speech or Debate Clause of Article III, Section 21 of the Texas Constitution.

7.  As to Count I, because the Governor was acting in a legislative capacity in vetoing the appropriation at issue, trial on Count I of the indictment is barred as a matter of law because the State could only sustain its burden, if at all, by introducing evidence privileged by the Speech or Debate Clause of Article III, Section 21 of the Texas Constitution.

8.  As to Count I, Section 39.02(a)(2) is unconstitutional as applied because Governor Perry had the right to do any and all acts of which he is charged in the exercise of his rights under the Free Speech guarantee of the First Amendment to the Constitution of the United States.

9.  As to Count I, Section 39.02(a)(2) is unconstitutional as applied because Governor Perry had the right to do any and all acts of which he is charged in the exercise of his rights under the Free Speech guarantee of Article I, Section 8 of the Texas Constitution.

## Count II

1.  As to Count II, Section 36.03(a)(1) violates the First and Fourteenth Amendments to the United States Constitution because, as enacted into law, it is unconstitutionally overbroad on its face.

2.  As to Count II, Section 36.03(a)(1) violates Article I, Section 8 of the Texas Constitution because, as enacted into law, it is unconstitutionally overbroad on its face.

3

3. As to Count II, Section 36.03(a)(1) violates the First and Fourteenth Amendments to the United States Constitution because, as enacted into law, it is unconstitutionally vague on its face.

4. As to Count II, Section 36.03(a)(1) violates Article I, Section 8 of the Texas Constitution because, as enacted into law, it is unconstitutionally vague on its face.

5. As to Count II, Section 36.03(a)(1) violates the First, Fifth, and Fourteenth Amendments to the United States Constitution because it is unconstitutionally vague as applied.

6. As to Count II, Section 36.03(a)(1) violates Article I, Sections 8, 10, and 19 of the Texas Constitution because it is unconstitutionally vague as applied.

7. As to Count II, Section 36.03(a)(1) violates the First, Fifth, and Fourteenth Amendments to the United States Constitution because it is unconstitutionally overbroad as applied.

8. As to Count II, Section 36.03(a)(1) violates Article I, Sections 8, 10, and 19 of the Texas Constitution because it is unconstitutionally overbroad as applied.

9. As to Count II, Section 36.03(a)(1) is unconstitutional as applied because it infringes upon the Governor's absolute constitutional right and duty to approve or disapprove "items of appropriation" under Article IV, Section 14 of the Texas Constitution.

10. As to Count II, Section 36.03(a)(1) is unconstitutional as applied because it violates the separation of powers between the various departments of government that is guaranteed to the People by Article II, Section 1 of the Texas Constitution.

11. As to Count II, Section 36.03(a)(1) is unconstitutional as applied because it violates the Speech or Debate Clause of Article III, Section 21 of the Texas Constitution.

12. Count II of the Indictment is void as a matter of law because, contrary to requisites of Section 2.02(b) of the Penal Code, it makes no attempt to negate the statutory exception set forth in Section 36.03(c) for "a member of the governing body of a governmental entity," which includes Governor Perry's actions as a member of the Legislative Department with regard to his actions in approving or disapproving of "items of appropriation" under Article IV, Section 14 of the Texas Constitution.

Defendant asserts that because Section 39.02(a)(2) and Section 36.03(a)(1) are unconstitutional, either on their face or as applied, or both, the indictment against Governor Perry must be dismissed and the prosecution barred.

4

The chronology of what has taken place so far in this case was set out in this court's Order Relating to Authority of Attorney Pro Tem. Those facts are not relevant to this writ application, nor are any other widely reported alleged facts related to this case.[3] The issues raised in Defendant's First Application For Pretrial Writ of Habeas Corpus are legal issues, and therefore an evidentiary hearing was not necessary and would not have been appropriate.[4]

## THE TRIAL COURT IS WITHOUT AUTHORITY TO REVIEW THE MERITS OF PRETRIAL "AS APPLIED" CHALLENGES TO THE CONSTITUTIONALITY OF TEXAS PENAL CODE SECTIONS 39.02(a)(2) AND 36.03(a)(1)

Whether a claim is even cognizable on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). If a non-cognizable claim is resolved on the merits in a pretrial habeas appeal, then the pretrial writ has been misused. *Id.*

Generally, a court's authority to act is limited to those actions authorized by constitution, statute, or common law. *State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991). A court

---

3 The unique circumstances involved in this case have been widely reported, argued, and discussed by many with no standing in the case, including the amicus briefs and many other self-appointed "experts." The alleged and speculated upon facts are not properly before this court at this time, and the court has no authority at this stage to examine the evidence that was presented to the Grand Jury. Only one amicus brief was properly filed by Counsel for Defendant and is contained in the court's file. The court considered the arguments set forth in that brief, but finds that they do not prevail over well settled cases decided by the Texas Court of Criminal Appeals. The Amici Curiae's brief fails to cite to any controlling Texas authority that would give this court authority to grant the requested relief. That brief does cite cases from other jurisdictions in support of Defendant's assertion that he is immune from prosecution under these facts. *See, e.g., State v. Dankworth*, 672 P.2d 148 (Alaska App. 1983) (holding that a state senator was immune from prosecution under the speech or debate clause of the Alaska Constitution) and *D'Amato v. Superior Court*, 167 Cal. App. 4th 861 (Cal. App. 4th Dist. 2008) (finding that the application of statute violated separation of powers clause, and that legislative immunity extends to criminal prosecutions). However, while the court finds the constitutional arguments raised by Counsel for Amici Curiae to be persuasive, this court must follow controlling *Texas* case law that precludes this court from considering the merits of Defendant's "as applied" constitutional challenges. The other amicus briefs were not properly filed. Many of those briefs were authored by inmates (arguing both in favor and against the State), and at least one was authored by a person held in a prior case to be a "vexatious litigant." Those briefs were not considered by the court.

4 In fact, Texas case law expressly prohibits the court from holding an evidentiary hearing on an "as applied" challenge. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 911 (Tex. Crim. App. 2011).

5

has the power to dismiss a case without the State's consent in certain circumstances, such as when a defendant has been denied a speedy trial (which is not at issue here), or when there is a defect in the charging instrument (which is addressed in this court's order ruling on the Defendant's First Motion To Quash and Dismiss the Indictment). *Id.* Moreover, a claim that a statute is unconstitutional on its face may be raised by a pretrial writ of habeas corpus, and the trial court would have authority to rule on the merits of such a claim. *Ex Parte Weise,* 55 S.W.3d 617, 620 (Tex. Crim. App. 2001), cited in *Ex Parte Thompson,* 414 S.W.3d 872 (Tex. App.— San Antonio 2013, pet. granted). However, a pretrial habeas is not available to test the sufficiency of the charging instrument or to construe the meaning and application of the statute defining the offense charged. *Ex parte Ellis,* 309 S.W.3d at 79.

The Texas Court of Criminal Appeals has made it crystal clear that a trial court has no authority to consider the merits of a pretrial writ of habeas corpus based upon an "as applied" challenge to the constitutionality of a statute. *State ex rel. Lykos v. Fine,* 330 S.W.3d 904, 911 (Tex. Crim. App. 2011) ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."); *Ex Parte Ellis,* 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (A pretrial habeas is an "extraordinary remedy," that may not be "misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage."); *Ex parte Weise,* 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) ("We granted review on our own motion to decide whether a pretrial writ of habeas corpus may issue on the ground that a penal statute is being unconstitutionally applied because of the allegations in the indictment or information. We conclude that it may not.")

6

469

The El Paso Court of Appeals in *Ex parte Cross,* 69 S.W.3d 810, 811 (Tex. App.—El Paso, 2002, no pet.), dismissed as not yet ripe for adjudication the defendant's pretrial appeal seeking reversal of the trial court's denial of his application for pretrial writ of habeas corpus. The court noted that "the Court of Criminal Appeals *has consistently cautioned* against most use of pretrial writs to adjudicate 'as applied' constitutional challenges; this also mitigates against the exercise of our discretion. . . . On this record, *we are not prepared to expand Texas jurisprudence* to hold that a pretrial writ of habeas corpus is the appropriate procedural vehicle by which an as applied First Amendment challenge should be adjudicated. This conclusion is particularly reinforced by settled Texas law that an 'as applied,' as opposed to a facial, constitutional challenge can only be preserved by raising that challenge in the trial court. . . . In other words, Texas law contemplates that such challenges can be adjudicated on direct appeal.") (emphasis added, citations omitted).

As in *State ex rel. Lykos v. Fine,* 330 S.W.3d at 919, Defendant in this case "has cited no state law or state procedure that permits a pretrial evidentiary hearing to determine the 'as applied' constitutionality of a state penal law or state criminal procedural statute. . . . He is, in truth, seeking a declaratory judgment." Because there is no basis under Texas law to conduct a pretrial evidentiary hearing to determine the "as applied" constitutionality of a state penal or criminal procedural statute, the trial court does not have legal authority to conduct any such pretrial evidentiary hearing or to issue any such pretrial declaratory judgment. If this court were to hold such a hearing or grant relief on the basis of Defendant's "as applied" constitutional challenges, **it would be acting "beyond the scope of [its] lawful authority."** *Id.* at 919.[5]

---

5 *See also, Ex parte Howard,* 191 S.W.3d 201, 203 (Tex. App – San Antonio 2005, no pet.)("A pretrial writ of habeas corpus ... may not be used to address an 'as applied' challenge to a statute. 'As applied' challenges must be litigated in the trial court and adjudicated on direct appeal.")(citing to *Ex parte Woodall,* 154 S.W.3d 698, 700–01

7

To paraphrase, Count I of the indictment alleges that Defendant, with intent to harm Rosemary Lehmberg and the Public Integrity Unit, intentionally or knowingly misused government property of which Defendant, as Governor of the State, had custody or possession (the property being described as "monies having a value in excess of $200,000" which were to be used to fund the continued operation of the Public Integrity Unit) "by dealing with such property contrary to an agreement under which defendant held such property or contrary to the oath of office he took as a public servant."

Summarizing Defendant's arguments presented in his writ application, he seeks to dismiss Count I on the ground that he, as the Governor of the State of Texas, had the constitutional right to exercise his power to veto legislation approving the funding for the continued operation of the Public Integrity Unit, and therefore *as a matter of constitutional law*, such conduct alleged in Count I of the indictment could not be considered a criminal misuse of such funds under Section 39.02(a)(2). The trial court is without authority at this pretrial stage of the case to consider and rule upon the merits of this particular defense because it is clearly (and is expressly stated by Defendant to be) a challenge to the constitutionality of Section

---

(Tex. App.--El Paso 2004, pet. ref'd) (recognizing argument alleging that a city ordinance is unconstitutional because it is an *ex post facto* law is "an 'as applied' challenge to the constitutionality of the ... ordinance."); *Ex parte Ragston,* 402 S.W.3d 472, 476 (Tex. App. –Houston [14th Dist.] 2013), aff'd on other grounds, 424 S.W.3d 49 (Tex. Crim. App. 2014) ("A pretrial writ of habeas corpus may not be used to address an as-applied constitutional challenge to a statute. An as-applied challenge is brought during or after a trial on the merits, because it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner. Even if an appellant calls his claim a facial challenge, if it is in fact an as-applied challenge, courts should refuse to consider the merits of the claim.") (citations omitted); *Barker v. State,* 335 S.W.3d 731, 734 (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd) ("The constitutionality of a statute 'as applied' to a defendant cannot be raised in a pretrial motion because resolution of such issue depends upon the facts of the case—facts that can be found only after all the evidence is presented at trial.")

8

39.02(a)(2) as that statute is being "applied" to *this* Defendant under *this* set of facts.[6] Therefore, pursuant to the controlling case law cited herein, this court is without the authority to entertain Defendant's "as applied" claims for relief as to Count I.

Defendant also raises "as applied" challenges as to Count II. Defendant asserts that he, as the Governor of the State of Texas, had the right *as a matter of constitutional law* under the Speech or Debate Clause to make the alleged threat to veto legislation approving the funding for the continued operation of the Public Integrity Unit in an attempt to effectuate the resignation of Travis County District Attorney Rosemary Lehmberg, and, under the Separation of Powers clause, the Judicial branch of government (this criminal court) cannot infringe upon such right *as a matter of constitutional law*.[7] Again, however, this court is without the authority to entertain pretrial such an "as applied" constitutional challenge with regard to Count II.

Although *State v. Hanson*, 793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.), arguably supports the court's ability to conduct an "as applied" analysis here, there was no petition for discretionary review filed in *Hanson*, and every case decided by the Texas Court of Criminal Appeals since *Hanson* has held that an "as applied" challenge to the constitutionality of a statute is not permitted at the pretrial stage. Thus, *Hanson* is not controlling.

The issues presented in this particular case are unique, and Defendant's arguments are compelling and may be relevant at a later time, but not during the pretrial process. As the Court stated in *State ex rel. Lykos v. Fine*, "these are all very important issues and they certainly

---

6 The court has discussed at length in its order denying Defendant's motion to quash the fact that Count I does not expressly allege that Defendant misused government property by exercising his veto power; however, the wording of the indictment is not at issue here.

7 Defendant also intends to claim a "public duty" justification under Texas Penal Code 9.21 (*See Application for Pretrial Writ of Habeas Corpus, page 31 n. 12*).

9

472

deserve careful consideration in an appropriate forum." 330 S.W.3d at 911. However, the current state of the law in Texas is that the trial court is not "the appropriate forum" to decide pretrial whether Texas Penal Code Sections 39.02(a)(2) and 36.03(a)(1) are being unconstitutionally applied to this Defendant, and this court knows of no exception allowing such pretrial "as applied" challenges involving this unique and particular set of circumstances. **Simply put, the court's hands are tied.**

Therefore, for the reasons noted above, Defendant's claims for relief 1 through 9 as to Count I, and claims for relief 5 through 11 as to Count II are DENIED.

## THIS COURT DOES HAVE THE AUTHORITY TO RULE ON AN APPLICATION FOR PRETRIAL WRIT OF HABEAS CORPUS BASED UPON A FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF A STATUTE

### I.      Section 39.02(a)(2) is Not Unconstitutional On Its Face

Pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute that defines the offense but, as noted above, it may not be used to advance an "as applied" challenge. *Ex parte Ellis,* 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). Although not expressly listed among the enumerated claims for relief, Defendant summarily asserts that Section 39.02(a)(2) is unconstitutional on its face. However, such an assertion is not, by itself, enough. *Id.* If a claim designated as a facial challenge is in fact an "as applied" challenge, this court should refuse to consider the merits of the claim. *Id.*

Although this court finds that Defendant's claims regarding Section 39.02(a)(2) are "as applied" challenges, not facial challenges, this court nevertheless finds that Section 39.02(a)(2) is not facially unconstitutional. *See Margraves v. State,* 34 S.W.3d 912, 921 (Tex. Crim. App. 2000) (overruled on other grounds by *Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009) (Although construing a former version of Section 39.02, the court noted that the statute was not

10

unconstitutionally vague: "The statute requires that a public servant use government property only in ways that are authorized.") Therefore, to the extent that Defendant is claiming that Section 39.02(a)(2) is facially unconstitutional, that claim for relief is DENIED.

## II.    Section 36.03(a)(1) is Not Unconstitutional On Its Face

Claims for relief 1 through 4 as to Count II assert that TEX. PENAL CODE Section 36.03(a)(1) is unconstitutional on its face.[8]    Specifically, Defendant claims that Section 36.03(a)(1) violates the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Texas Constitution, because, as enacted into law, it is unconstitutionally vague and overbroad on its face.

In a facial challenge to a statute's constitutionality, the court "must examine the statute as it is written, rather than how it is applied in a particular case." *State v. Rosseau,* 396 S.W.3d 550, 557 *n. 9* (Tex. Crim. App. 2013), citing to *State ex rel. Lykos v. Fine,* 330 S.W.3d 904, 908 (Tex. Crim. App. 2011).    Facial challenges to a statute are difficult to mount successfully. *See Ex parte Morales,* 416 S.W.3d 546, 548 (Tex. App. –Houston [14th Dist.] 2013, pet. ref'd), citing to *Santikos v. State,* 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

In *Ex parte Lo*, 424 S.W.3d 10, 14-18 (Tex. Crim. App. 2013), the Court of Criminal Appeals set out the standard of review when the constitutionality of a statute, which is a question of law, is being attacked:

> When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. The burden normally rests upon the person challenging the statute to establish its unconstitutionality. However, when the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed. Content-based regulations (those

---

8  Section 36.03, Coercion of a Public Servant, states, in pertinent part, that "(a) a person commits an offense if by means of coercion he: (1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty."

11

474

laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption. The Supreme Court applies the "most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."

To satisfy strict scrutiny, a law that regulates speech must be (1) necessary to serve a (2) compelling state interest and (3) narrowly drawn. A law is narrowly drawn if it employs the least restrictive means to achieve its goal and if there is a close nexus between the government's compelling interest and the restriction. If a less restrictive means of meeting the compelling interest could be at least as effective in achieving the legitimate purpose that the statute was enacted to serve, then the law in question does not satisfy strict scrutiny. Furthermore, when the content of speech is the crime, scrutiny is strict because, "as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."

\* \* \*

... According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors. "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse." This rule reflects the judgment that "[t]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted[.]"

Because Defendant is asserting that Section 36.03(a)(1) violates his First Amendment rights to free speech, in an abundance of caution, the court will construe the issue of its facial constitutionality under the presumption of invalidity set forth above in *Ex parte Lo*.

## A. Section 36.03(a)(1) is Not Unconstitutionally Overbroad

A statute is impermissibly overbroad if, in addition to proscribing activities that may be constitutionally prohibited, it sweeps within its coverage speech or conduct protected by the First Amendment. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); *Roberts v. State*, 278 S.W.3d 778, 790 (Tex. App.—San Antonio 2008, pet. ref'd). To vindicate First Amendment

12

interests and prevent a chilling effect on the exercise of First Amendment freedoms, the overbreadth doctrine allows a statute to be invalidated on its face even if it has legitimate applications. *Ex parte Ellis,* 309 S.W.3d at 90-91. However, the overbreadth doctrine is "strong medicine" that should be employed "sparingly" and "only as a last resort." *Id.* The court is to determine whether "the statute reaches a substantial amount of constitutionally protected conduct" and whether a "substantial number of the statute's applications are unconstitutional judged in relation to the statute's plainly legitimate sweep." *Ex parte Thompson,* 414 S.W.3d 872 (Tex. App.—San Antonio, 2013 pet. granted).

Defendant challenges Section 36.03, claiming that, on its face, it unconstitutionally regulates free speech. Assuming that coercion[9] can even be considered constitutionally protected speech,[10] this court finds that Section 36.03, on its face, does not unconstitutionally infringe on *protected* free speech. Therefore, even if this court's analysis does not begin with the presumption of validity (giving great latitude to Defendant's argument that Section 36.03 regulates free speech), this court concludes that Section 36.03(a)(1) satisfies strict scrutiny, and any presumption of invalidity has been sufficiently rebutted.

First, this court believes that Section 36.03(a)(1) serves a compelling state interest. Although the issue involved in *Tobias v. State,* 884 S.W.2d 571, 580-81 (Tex. App.—Fort Worth, 1994, pet. ref'd), *cert. denied* 515 U.S. 1126 (1995), *reh'g denied,* 515 U.S. 1180 (1995),

---

9 "Coercion" is defined in Texas Penal Code Section 1.07(9) as a "threat, however communicated: (A) to commit an offense; (B) to inflict bodily injury in the future on the person threatened or another; (C) to accuse a person of any offense; (D) to expose a person to hatred, contempt, or ridicule; (E) to harm the credit or business repute of any person; or (F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action."

10 In *Tobias v. State,* 884 S.W.2d 571, 580-81 (Tex. App. – Fort Worth, 1994, pet. ref'd), *cert. denied* 515 U.S. 112 (1995), *reh'g denied,* 515 U.S. 1180 (1995), the court discussed five United States Supreme Court cases wherein certain statements that could possibly be construed as threatening were ultimately constitutionally protected under the specific facts of those cases.

13

was not a facial challenge to the constitutionality of Section 36.03, the following discussion by the court is helpful:

> ...While the courts have not yet had an opportunity to rule upon a First Amendment challenge to Penal Code section 36.03, **related statutes prohibiting various types of threats have withstood First Amendment challenges.** *See Collection Consultants, Inc. v. State,* 556 S.W.2d 787, 793–94 (Tex.Crim.App.1977) (op. on reh'g), *appeal dism'd,* 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399 (1978) (telephone harassment statute does not violate defendant's free speech rights); *Puckett v. State,* 801 S.W.2d 188, 192–93 (Tex.App.— Houston [14th Dist.] 1990, pet. ref'd), *cert. denied,* 502 U.S. 990, 112 S.Ct. 606, 116 L.Ed.2d 629 (1991) (retaliation statute prohibiting threats of unlawful action against a person on account of person's actions as a public servant, does not violate defendant's free speech rights).
>
> ... In *Puckett,* the court stated that "[t]he State of Texas undoubtedly has a valid and substantial interest in protecting the integrity of its judicial system and in allowing public servants, witnesses and prospective witnesses to perform their respective duties without interference from threats of physical violence." *Puckett,* 801 S.W.2d at 192. We find the same reasoning applies in the instant case. The State has a valid and substantial interest in protecting the integrity of the judicial system and in allowing its appellate justices to perform their respective duties without interference from threats of physical violence.

(Emphasis added).

Second, this court believes that the statute is narrowly drawn because it employs the least restrictive means to achieve its goal, and there is a close nexus between the compelling interest and the restriction. For example, as the court noted in *Phillips v State,* 401 S.W.3d 282, 290 (Tex. App. – San Antonio 2013, pet. ref'd), "[t]he structure of section 36.03's statutory language shows the proscribed conduct is 'influencing or attempting to influence' and the means of influence is 'by coercion;' subsections (a)(1) and (a)(2) provide two alternate methods of committing the offense by influencing or attempting to influence either a public servant or a voter. TEX. PENAL CODE ANN. § 36.06(a)(1), (2). . . . In addition, the Penal Code's definition of 'coercion' states that 'coercion' is a threat, and lists six different types of threats."

14

Defendant contends that "Section 36.03(a)(1) criminalizes a substantial amount of constitutionally protected speech, including the veto 'threat' purportedly made by Governor Perry." (*Application for Pretrial Habeas Corpus, page 21*). Threats that amount to extortion are not constitutionally protected. *See Sanchez v. State*, 995 S.W.2d 677, 687-88 (Tex. Crim. App. 1999). *See also Roberts v. State*, 278 S.W.3d 778, 790-91 (Tex. App.—San Antonio 2008, pet. ref'd) ("Section 31.01 provides that consent is not effective if it is induced by deception or coercion. The offense proscribed in the instant case is in many ways similar to bribery or extortion. Bribery and extortion, while involving 'speech,' are not protected by the First Amendment. Threats and bribes are not protected simply because they are written or spoken; extortion is a crime although it is verbal. Accordingly, the type of speech prohibited by section 31.03 is not within the nature of speech protected by the First Amendment; therefore, the statute is not unconstitutionally overbroad.") (citations omitted). This court concludes that Section 36.03(a)(1)'s language limits the application of the statute to criminal behavior and does not render it overbroad to substantially include innocent behavior.

Defendant also asserts that "the literal words of the statute would routinely subject legislators to criminal exposure merely for engaging in their essential legislative functions." The court disagrees. It seems clear that the Section 36.03(c)[11] exception was added to the statute to allow for just that. Therefore, this court finds that Section 36.03(a)(1) is not unconstitutionally overbroad.

---

11 Section 36.03(c) states that "[i]t is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body. For the purposes of this subsection, the term 'official action' includes deliberations by the governing body of a governmental entity."

15

## B. Section 36.03(a)(1) is Not Unconstitutionally Vague

Defendant argues that his vagueness challenges involve First Amendment considerations, which means that a criminal law may be held facially invalid even if the law has some valid application. *Ex parte Ellis,* 309 S.W.3d at 90. When a statute is challenged as unconstitutionally vague, the concern is premised on notions of notice and due process. *Cain v. State,* 855 S.W.2d 714, 717 (Tex. Crim. App. 1993) ("Essentially, as a society we want people to know what conduct is prohibited before we enforce the laws which prohibit their conduct. A statute may be unconstitutionally vague, both in the sense that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, and because it encourages arbitrary and erratic arrests and convictions.")

It is well established that criminal laws must be sufficiently clear in at least three respects. First, a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited. Second, the law must establish determinate guidelines for law enforcement. Finally, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Long v. State,* 931 S.W.2d 285, 287 (Tex. Crim. App. 1996) (When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness demands a greater degree of specificity than in other contexts. Greater specificity is required to preserve adequately the right of free expression because uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.)

Criminal laws must fairly warn individuals of what activity is forbidden. *Ex parte Morales-Ryan,* 2008 WL 2355712 (Tex. App. – San Antonio 2008, pet ref'd), *citing Cotton v. State,* 686 S.W.2d 140, 141 (Tex. Crim. App. 1985) ("A statute which forbids or requires the

16

doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.") The court must make two inquiries to determine if a statute is vague: (1) Can people of ordinary intelligence ascertain what activity is forbidden by the statute? (2) Does the statute encourage arbitrary arrests or prosecution? *Id.* With regard to Section 36.03(a)(1), this court finds that the answer to number (1) is "yes" and the answer to number (2) is "no." Section 36.03(a)(1) satisfies both hurdles to overcome a vagueness challenge.

This court finds that people of ordinary intelligence can ascertain that attempting to coerce or influence a public servant by making threats is forbidden. In addition, there is no support for the conclusion that the statute encourages arbitrary arrests or prosecution. As noted herein, the term "coercion" is clearly defined by statute as including certain types of "threats."

In *Olivas v. State,* 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006), the Court examined the ordinary meaning of "threaten" as that term is used in the Penal Code theft statute. Although not directly on point with the issues presented here, the following analysis is relevant:

> When determining a statute's meaning, a court must first attempt to interpret the statute based on the plain meaning of the words used. The word "threaten" is not statutorily defined in the Penal Code, so we turn to the common, ordinary meaning of that word. Webster's Dictionary defines "threaten" in the following manners:
>
> 1. to declare an intention of hurting or punishing; to make threats against;
>
> 2. to be a menacing indication of (something dangerous, evil, etc.); as the clouds *threaten* rain or a storm;
>
> 3. to express intention to inflict (injury, retaliation, etc.);
>
> 4. to be a source of danger, harm, etc. to.
>
> ... Black's Law Dictionary defines "threat" as: "A communicated intent to inflict harm or loss on another or on another's property...."

17

As the term "threat" is read in the context of the Penal Code's definition of "coercion," this court finds that the offense of coercion of a public servant under Section 36.03(a)(1) is not unconstitutionally vague. *See also Roberts v. State,* 278 S.W.3d 778, 790-91 (Tex. App.—San Antonio 2008, pet. ref'd) ("In this case, coercion is statutorily defined. . . . Read in context, the statute is not so indefinite that people of common understanding would be required to guess at its understanding or that would lead to arbitrary and erratic arrests and convictions. . . . To require further definition of the term 'coerce' would reach the point of defining definitions.").

In *Tobias v. State,* 884 S.W.2d 571 (Tex. App.—Fort Worth, 1994, pet. ref'd), *cert. denied* 515 U.S. 1126 (1995), *reh'g denied,* 515 U.S. 1180 (1995), the court held that Section 36.03 is "narrowly drawn by limiting its scope to threats of a public official in an attempt to influence the exercise of the official's power." *Tobias* concluded that Section 36.03 "is much more akin" to the federal retaliation statute upheld by the Seventh Circuit in *United States v. Velasquez,* 772 F.2d 1348, 1356–58 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986), wherein the court held that "[a] threat to break a person's knees or pulverize his automobile as punishment for his having given information to the government is a statement of intention rather than an idea or opinion and is not part of the marketplace of ideas." *Id.* at 1357. *Tobias* held that "Penal Code section 36.03 is not unconstitutionally vague and overbroad."

Defendant also asserts that *State v. Hanson,* 793 S.W.2d 270, 273 (Tex. App.—Waco 1990, no pet.) supports his claim that Section 36.03(a)(1) is facially unconstitutional. *Hanson* does not apply to the court's analysis of the facial constitutionality of Section 36.03. The court

18

481

first notes that *Hanson* involved a motion to quash, not a pretrial writ of habeas corpus.[12] Second, the court in *Hanson* expressly stated that "the penal provisions were unconstitutionally vague when *applied* to Judge Hanson's alleged conduct, [thus] the question of their facial vagueness will not be addressed." (emphasis added). Moreover, Section 36.03 was amended after *Hanson* to include the 36.03(c) exception, which appears to address "robust debate" in the "arena" of "politics" that was at issue in *Hanson. See id.* at 273 (Referencing the 36.03(c) exception, the court noted that "[a]n unconstitutional statute can be amended to thereafter make it constitutional.")

Therefore, for the reasons stated herein, this court concludes that Section 36.03(a)(1) is not unconstitutional on its face. Claims for relief 1 through 4 as to Count II are DENIED.

## III.    Defendant's Claim For Relief Number Twelve Under Count II

Defendant claims that Count II of the Indictment is void as a matter of law because it does not properly negate the exception under Section 36.03(c). As noted above, Section 36.03(c) contains language excepting criminal liability under the statute for members of a governing body acting in their official capacity. This is a challenge to the sufficiency of Count II, and a pretrial habeas is not available to test the sufficiency of the charging instrument. *Ex parte Ellis,* 309 S.W.3d at 79. This is a claim that has been addressed in the court's Order Denying Defendant's First Motion to Quash and Dismiss the Indictment. Therefore, Defendant's claim for relief 12 is DENIED.

---

12 *Hanson* is discussed in greater detail in this court's order denying Defendant's motion to quash.

For the reasons discussed herein, the court DENIES Defendant's First Application for Pretrial Writ of Habeas Corpus.

SIGNED and ENTERED on _____ January 27, 2015 _____.

_____

BERT RICHARDSON
Judge Presiding
By Assignment

20

# APPENDIX C

## DEFINITIONS

(a) In this code:

. . .

(9) "Coercion" means a threat, however communicated:

(A) to commit an offense;

(B) to inflict bodily injury in the future on the person threatened or another;

(C) to accuse a person of any offense;

(D) to expose a person to hatred, contempt, or ridicule;

(E) to harm the credit or business repute of any person; or

(F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

. . .

(24) "Government" means:

(A) the state;

(B) a county, municipality, or political subdivision of the state; or

(C) any branch or agency of the state, a county, municipality, or political subdivision.

. . .

(39) "Possession" means actual care, custody, control, or management.

. . .

(41) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

(A) an officer, employee, or agent of government;

(B) a juror or grand juror; or

(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or

(D) an attorney at law or notary public when participating in the performance of a governmental function;  or

(E) a candidate for nomination or election to public office;  or

(F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so.

. . .

(48) "Unlawful" means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege.

. . .

**COERCION OF PUBLIC SERVANT OR VOTER**

(a) A person commits an offense if by means of coercion he:

(1)    influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty;  or

(2)    influences or attempts to influence a voter not to vote or to vote in a particular manner.

(b) An offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree.

(c) It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body.  For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

# TEXAS PENAL CODE § 39.01

## DEFINITIONS

In this chapter:

(1) "Law relating to a public servant's office or employment" means a law that specifically applies to a person acting in the capacity of a public servant and that directly or indirectly:

   (A) imposes a duty on the public servant;  or

   (B) governs the conduct of the public servant.

(2) "Misuse" means to deal with property contrary to:

   (A) an agreement under which the public servant holds the property;

   (B) a contract of employment or oath of office of a public servant;

   (C) a law, including provisions of the General Appropriations Act specifically relating to government property, that prescribes the manner of custody or disposition of the property;  or

   (D) a limited purpose for which the property is delivered or received.

**ABUSE OF OFFICIAL CAPACITY**

(a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly:

    (1)    violates a law relating to the public servant's office or employment;  or

    (2)    misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

(b) An offense under Subsection (a)(1) is a Class A misdemeanor.

(c) An offense under Subsection (a)(2) is:

    (1)    a Class C misdemeanor if the value of the use of the thing misused is less than $20;

    (2)    a Class B misdemeanor if the value of the use of the thing misused is $20 or more but less than $500;

    (3)    a Class A misdemeanor if the value of the use of the thing misused is $500 or more but less than $1,500;

    (4)    a state jail felony if the value of the use of the thing misused is $1,500 or more but less than $20,000;

    (5)    a felony of the third degree if the value of the use of the thing misused is $20,000 or more but less than $100,000;

    (6)    a felony of the second degree if the value of the use of the thing misused is $100,000 or more but less than $200,000;  or

    (7)    a felony of the first degree if the value of the use of the thing misused is $200,000 or more.

(d) A discount or award given for travel, such as frequent flyer miles, rental car or hotel discounts, or food coupons, are not things of value belonging to the government for purposes of this section due to the administrative difficulty and cost involved in recapturing the discount or award for a governmental entity.

(e) If separate transactions that violate Subsection (a)(2) are conducted pursuant to one scheme or continuing course of conduct, the conduct may be considered as one offense and the value of the use of the things misused in the transactions may be aggregated in determining the classification of the offense.

(f) The value of the use of a thing of value misused under Subsection (a)(2) may not exceed:

(1)    the fair market value of the thing at the time of the offense; or

(2)    if the fair market value of the thing cannot be ascertained, the cost of replacing the thing within a reasonable time after the offense.

# APPENDIX D

## ARTICLE 2.  THE POWERS OF GOVERNMENT

Sec. 1.  DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS.  The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit:  Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

## ARTICLE 3.  LEGISLATIVE DEPARTMENT

Sec. 21.  WORDS SPOKEN IN DEBATE.  No member shall be questioned in any other place for words spoken in debate in either House.

## ARTICLE 4.  EXECUTIVE DEPARTMENT

Sec. 1.  OFFICERS CONSTITUTING THE EXECUTIVE DEPARTMENT.  The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General.

. . .

Sec. 9.  GOVERNOR'S MESSAGE AND RECOMMENDATIONS; ACCOUNTING FOR PUBLIC MONEY; ESTIMATES OF MONEY REQUIRED.  The Governor shall, at the commencement of each session of the Legislature, and at the close of his term of office, give to the Legislature information, by message, of the condition of the State; and he  shall recommend to the Legislature such measures as he may deem expedient. . . .

. . .

Sec. 14.  APPROVAL OR DISAPPROVAL OF BILLS; RETURN AND RECONSIDERATION; FAILURE TO RETURN; DISAPPROVAL OF ITEMS OF APPROPRIATION.  Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval.  If he approve he shall sign it; but if he disapprove it, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it.  If after such reconsideration, two-thirds of the members present agree to pass the bill, it shall be sent, with the objections, to the other House, by which likewise it shall be reconsidered; and, if approved by two-thirds of the members of that House, it shall become a law; but in such cases the votes of both Houses shall be determined by yeas and nays, and the names of the members voting for and

1

against the bill shall be entered on the journal of each House respectively. If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment. If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. If the Legislature be in session, he shall transmit to the House in which the bill originated a copy of such statement and the items objected to shall be separately considered. If, on reconsideration, one or more of such items be approved by two-thirds of the members present of each House, the same shall be part of the law, notwithstanding the objections of the Governor. If any such bill, containing several items of appropriation, not having been presented to the Governor ten days (Sundays excepted) prior to adjournment, be in the hands of the Governor at the time of adjournment, he shall have twenty days from such adjournment within which to file objections to any items thereof and make proclamation of the same, and such item or items shall not take effect.

# APPENDIX E

**FIRST AMENDMENT**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**FOURTEENTH AMENDMENT**

SECTION 1.  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

. . .